Harold RUSSELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 685–86.

Court of Criminal Appeals of Texas, En Banc.

April 1, 1987.

Robert G. Estrada, Wichita Falls, for appellant.

Barry Macha, Dist. Atty. & Charles J. Mason, Jr., Asst. Dist. Atty., Wichita Falls, Robert Huttash, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted of murder and sentenced to twenty-five years' incarceration in the Texas Department of Corrections. The Fort Worth Court of Appeals affirmed appellant's conviction, holding that he had not invoked his right to counsel after being informed of that right through the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Russell v. State*, 706 S.W.2d 824 (Tex.App.—Ft. Worth, 1986). Thus, the Court of Appeals held appellant's twenty-eight page confession was properly admitted.

We granted appellant's petition for discretionary review to determine whether the Court of Appeals was correct in finding that appellant's inquiry, as to the interrogating officer's opinion of the necessity of having counsel present during questioning, was not an invocation of his right to counsel.

The record reflects that on June 13, 1984, firefighters from the Wichita Falls Fire Department discovered the body of Richard Dupree locked in the trunk of a burning automobile. Medical testimony revealed that Dupree suffered several blows to the head, that he was placed in the trunk while still alive and that he died as a result of carbon monoxide poisoning.

Subsequent investigation led police to the home of appellant's sister, Delia Taylor. Dupree and Taylor apparently had been living together several months prior to the incident. Taylor contacted appellant, who voluntarily talked with Detective Shephard of the Wichita Falls Police Department.

Appellant also volunteered to go to the morgue to identify the body.

On January 20, 1985, a voluntary statement was taken from appellant by Detective Shephard. Prior to this statement being given, appellant was taken before Justice of the Peace R.L. Stewart who informed him of his rights.

On January 21, 1985, appellant was treated at the Wichita Falls General Hospital for a self-inflicted gunshot wound. Appellant told persons present that he shot himself because everyone believed he killed Dupree.

Appellant was arrested on February 7, 1985 and was given his *Miranda* warning at least twice that day. He was also warned twice on February 8th. On February 9, 1985, Detective Shephard again read appellant his rights and proceeded to review the evidence gathered in the case. After hearing this, appellant decided to give a statement. Judge Stewart was again called in to warn appellant.

Prior to giving his statement appellant asked the officers present, Detective Shephard and Sergeant Smith, whether they thought the presence of an attorney was necessary. Detective Shephard replied that he would not advise appellant as to whether an attorney was necessary but did advise him that he had the right to have one present during questioning. Detective Shephard then asked appellant if he wished to continue and appellant replied affirmatively.

Approximately ten minutes later appellant again asked the officers if they thought an attorney was necessary. They responded in like fashion that they would not give an opinion. However, they again explained that appellant had the right to have an attorney present. The officers again asked appellant if he wanted to continue and again he responded affirmatively. The same question was asked by appellant a third time resulting in the same replies from the interrogating officers.

Not surprisingly, appellant's version of the facts differs slightly. He asserted that he only gave a statement because he was scared of the officers and believed they

would physically abuse him if he refused. He stated that when he asked them whether they thought he needed an attorney, they responded, "I wouldn't recommend one," and, "Well, if we do get you one it would take a week or two weeks."

Notwithstanding this, the trial judge made the following findings of fact: Appellant never requested an attorney; he never stated he wanted to stop the interview; he voluntarily gave his statement; and he never indicated that he did not want to give a statement. The trial court concluded that appellant knowingly and intelligently waived his constitutional rights and that his inquiry into the interrogating officer's opinion did not constitute an invocation of his right to counsel.

Initially, we point out that the trial court is the sole judge of the credibility of the witnesses in a pre-trial hearing. Absent a showing of an abuse of discretion the findings of the trial court will not be disturbed on appeal. *Hawkins v. State,* 613 S.W.2d 720 (Tex.Cr.App.1981). The trial court obviously chose to believe the version of the facts propounded by the interrogating officers and resolved the conflicts in their favor. We find nothing in the record to indicate that this was an abuse of discretion.

In *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), the United States Supreme Court explained that the admissibility of a confession depends on two distinct inquiries. First, the court must determine whether the accused actually invoked his right to counsel. Then, if the court finds that the right to counsel has been invoked, the court must determine whether the accused validly waived that right. We are concerned with the first inquiry here.

Appellant argues that his questions to the interrogating officers constituted a clear invocation of his right to counsel,

such that any further interrogation should have ceased. We do not agree.

Appellant's argument is based on a misconception of this Court's holding in *Ochoa v. State,* 573 S.W.2d 796 (Tex.Cr.App.1978). In *Ochoa,* supra, we held that "where a defendant indicates in any way that he desires to invoke his right to counsel, interrogation must cease." In *Ochoa,* while the defendant was being interrogated, he told the officer involved that he would like to talk to an attorney. The officer proceeded to make "idle" conservation with the defendant and then resumed questioning about the offense. No attorney was contacted. We held that there are no magic words required to invoke a right to counsel. However, nor will any mention of the word "lawyer" suffice.[1] The facts and circumstances in *Ochoa,* namely, the defendant's statement that he wanted to talk to an attorney, constituted a clear invocation of his right to counsel. Therefore, further interrogation should have ceased.

*Ochoa,* supra, is consistent with *Miranda,* supra, and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Supreme Court said in *Miranda* that, "if however, [the defendant] indicates in any manner and at any stage of the proceedings that he wishes to consult with an attorney before speaking there can be no questioning ..." In *Edwards,* supra, the Court emphasized that "it is inconsistent with Miranda and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has *clearly* asserted his right to counsel." *Edwards,* supra, 451 U.S. at 485, 101 S.Ct. at 1885, 68 L.Ed.2d at 387. (emphasis added). An accused can invoke his right to have counsel present during interrogation in any manner and interrogation must immediately cease. However, the invocation must be clearly asserted. This is far from saying, as appellant contends, that the mere mention of the word "lawyer" is sufficient to invoke that right. Recently, in

---

1. In a footnote in *Smith v. Illinois,* 469 U.S. 91, n. 3, 105 S.Ct. 490, n. 3, supra, the Supreme Court interpreted Ochoa to mean that any mention of the word "lawyer" would invoke an accused's right to have counsel present during questioning. This misinterprets Texas caselaw and departs significantly from subsequent state and federal constructions of the Fifth Amendment right.

*Collins v. State,* 727 S.W.2d 565 (Tex.Cr. App.1987), we held that there are no magic words required to invoke an accused's right to counsel and the mere mentioning of the word "lawyer" does not constitute an automatic invocation. Each case must be looked at individually to determine whether, under all the facts and circumstances present, the accused's statement can be construed as being an invocation of his right to counsel. See *Massengale v. State,* 710 S.W.2d 594 (Tex.Cr.App.1984); *Porier v. State,* 662 S.W.2d 602 (Tex.Cr.App.1984); *Curtis v. State,* 640 S.W.2d 615 (Tex.Cr. App.1982); *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App.1981); *Ochoa,* supra.

■ In the instant case appellant's inquiry into the officer's opinion as to the necessity of counsel being present during interrogation cannot be viewed as a *clear* invocation of his right to counsel because his question asking another's opinion does not indicate his own assertion of his right. Appellant merely asked for an opinion, presumably to assist him in making his own decision. The officers obviously knew that appellant was referring to the presence of counsel during interrogation and sought to clarify the question to determine if appellant actually wanted an attorney at that time. Appellant's seeking of an opinion concerning a decision to have an attorney present created an ambiguous situation which the officers properly sought to clear up. Appellant did not, by his question, demonstrate that he desired an attorney. Cf *Ochoa,* supra; *Porier,* supra; *Castillo v. State,* 616 S.W.2d 620 (Tex.Cr.App.1981).

However, even when an accused has not clearly invoked his right to counsel, his comments may constitute an "equivocal" invocation of his right requiring that further interrogation cease until the invocation issue is clarified.[2] This position is consistent with *Miranda,* supra, where the Supreme Court specifically approved the F.B.I.'s policy that: "if a suspect is indecisive in his request for counsel, there may be some question of whether he did or did not waive counsel. Situations of his kind

must necessarily be left to the judgment of the interviewing agent." *Miranda,* supra, 384 U.S. at 485, 86 S.Ct. at 1633.

In *Nash v. Estelle,* 597 F.2d 513 (5th Cir.1979), the Circuit Court of Appeals held that when an accused expresses both a desire for counsel and a desire to continue the interview, it is permissible for the interrogating officer to make further inquiry to clarify the accused's wishes.

In *Nash,* supra, the following colloquy took place between *Nash* and the interrogating official, Buck Files:

Nash: Well, I don't have the money to hire one, but I would like, you know, to have one appointed.

Files: You want one to be appointed for you?

Nash: Yes, sir.

Files: Okay. I was hoping that we might talk about this, but if you want a lawyer appointed, then we are going to have to stop right now.

Nash: But, uh, I kinda, you know, wanted, you know, to talk about it, you know, to kinda, you know, try to get it straightened out.

Files: Well, I can talk about it with you and I would like to, but if you want a lawyer, well, I am going to have to hold off, I can't talk to you. It's your life.

Nash: I would like to have a lawyer, but I'd rather talk to you.

Files: Well, what that says there is, it doesn't say that you don't ever want to have a lawyer, it says that you don't want to have a lawyer here, now. You got the right to have a lawyer here right now, and I want you to know that. But if you want to have a lawyer here, well, I am not going to talk to you about it.

Nash: No, I would rather talk to you.

Files: You would rather talk to me? You do not want to have a layer [sic] here right now?

Nash: No, sir.

2. Of course, an accused's comments may amount to no invocation of his right to counsel

at all. In such cases the interrogation may continue. See *Massengale,* supra; *Curtis,* supra.

Files: Are you absolutely certain of that?

Nash: Yes, sir.

The Court held that Files' action in clarifying the defendant's position was proper, refusing to endow the word "lawyer" with "talismanic" qualities such that its mere mention invokes the right to have one present. The court reasoned:

[A] blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interest. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975)

*Nash,* supra, 597 F.2d at 517.

Similarly, in *Thompson v. Wainwright,* 601 F.2d 768 (5th Cir.1979), the Court further explained its position. In *Thompson,* supra, the defendant stated that he would like to talk to his attorney before giving a statement to the police. The interrogating officer replied that if he told his lawyer first he would not be able to tell his story to the police later. The court stated:

[W]henever even an equivocal request for an attorney is made by a suspect during custodial interrogation, the scope of that interrogation is immediately narrowed to one subject and one subject only. *Further questioning thereafter must be limited to clarifying that request* until it is clarified. When and if it is clarified as a present desire for the assistance of legal counsel, *all* interrogation must cease until that is provided, just as in the case of an initial, unambiguous request for an attorney.

*Thompson,* supra, 601 F.2d at 771.

The court concluded, however, that the officers' comments in *Thompson,* supra, did not seek to clarify the defendant's intent but instead presumed to tell him what an attorney would advise. The clarifying questions "may not take the form of argument between interrogators and suspects about whether counsel would be in the suspect's best interest or not. Nor may it incorporate a presumption by the interrogators to tell the suspect what counsel's advice would be." *Thompson,* supra, 601 F.2d at 772. See also *Silva v. Estelle,* 672 F.2d 457 (5th Cir.1982); *United States v. Porter,* 776 F.2d 370 (1st Cir.1985); *United States v. Olsen,* 609 F.Supp. 1154 (U.S. D.C., D. Maine 1985).

█ When an accused's desires are related in an equivocal manner, the interrogating officers are not required to automatically cease the interview. Instead, they are allowed to continue questioning; however, the questions must be specifically aimed at discovering the accused's true desire. Further, an interrogating officer may not use the guise of clarification in order to coerce or intimidate the accused into making a statement. Nor may it be used to elicit further information about the event in question.

This rule has been applied in several Court of Appeals opinions in this state. In *Goodnough v. State,* 627 S.W.2d 841 (Tex. App.—San Antonio 1982 PDRR), the defendant stated, "I might better talk to a lawyer before I give a statement." The court concluded that if it was indeed unclear to the interrogating officer whether the defendant had invoked his right to counsel it was the officer's duty to clarify the defendant's position before proceeding with the interview in order to "honor his constitutional rights."

In *Huff v. State,* 678 S.W.2d 236 (Tex. App.—Corpus Christi 1984 no pet.), the defendant repeatedly asked the officers interrogating him how he could obtain a "free" attorney. The court held that the interrogating officers should have clarified the defendant's position regarding his desire to have an attorney present during questioning. See also *Beck v. State,* 681 S.W.2d 825 (Tex.App.—Houston [14th] 1984), aff'd 712 S.W.2d 745 (Tex.Cr.App.1986).

**578**

The rule established in *Nash, supra,* was approved in *Massengale v. State,* 710 S.W.2d 594, n. 4 (Tex.Cr.App.1986), where the Court stated that if the defendant's comment had been an equivocal invocation of his right to counsel the police would have been justified in clarifying the defendant's desire.

 Compared with the statements made in *Thompson* and *Nash,* both of which were considered equivocal invocations of the right to counsel, we are not sure that appellant's statements in the instant case indicate even an equivocal invocation of the right to counsel. In both of those cases the defendants exhibited a clear desire to have counsel present but also expressed a clear desire to talk to the police officers immediately. In the instant case appellant never vocalized a desire to have counsel present. He merely sought opinions as the necessity of having counsel present. Cf. *Goodnough, supra; Huff, supra.* Given the fact that appellant's comments were clearly aimed at the necessity of having counsel present during interrogation, we will give him the benefit of the doubt. Thus, when appellant inquired of the interrogating officers whether they thought it necessary to have counsel present, the officers were under a duty to clarify appellant's desire if they wanted to continue the interrogation. We find that Detective Shephard's reply that he would not express an opinion but, that appellant had the right to have an attorney present, coupled with his question to appellant as to whether he wanted to continue the interview, adequately clarified appellant's position. By ceasing the substantive interrogation, explaining to appellant his constitutional right and inquiring if appellant still desired to give a statement, the officers in the instant case sufficiently clarified appellant's intent as to the invocation of his right to counsel.

Accordingly, the judgment of the Court of Appeals is affirmed.

ONION, P.J., dissents.

CLINTON and TEAGUE, JJ., dissenting, would find that gamesmanship is not "clarification" under *Miranda.*