**STATE of Texas, Appellant,**

v.

**Scott Louis PANETTI, Appellee.**

**No. 04–93–00443–CR.**

Court of Appeals of Texas,
San Antonio.

Nov. 9, 1994.

Rehearing Denied Dec. 20, 1994.

Discretionary Review Refused April 5, 1995.

E. Bruce Curry, Dist. Atty., Kerrville, for appellant.

S. Preston Douglass, Jr., Wallace, Mosty, Machann, Jackson & Williams, Kerrville, for appellee.

Before BUTTS, PEEPLES and HARDBERGER, JJ.

PEEPLES, Justice.

Charged with capital murder, Scott Louis Panetti moved to suppress statements he had made to Texas Rangers during questioning. The trial court conducted a hearing and granted his motions to suppress. The State appealed, and this court affirmed the suppression order based on *Russell v. State*, 727 S.W.2d 573 (Tex.Crim.App.), *cert. denied,* 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 119 (1987). In an unpublished opinion, we held that Panetti made an equivocal request for counsel, and the interrogating officer did not sufficiently narrow his response to clarifying the request. The Court of Criminal Appeals granted the State's petition for discretionary review, but later remanded the case to this court for reconsideration in light of an intervening decision by the United States Supreme Court. *See Davis v. United States,* 512 U.S. ——, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). *Davis* held that when the suspect makes an equivocal request for counsel, the interrogating officer is not required to cease questioning or to confine his questions to clarifying the suspect's ambiguous request. In this regard, *Russell* places limits on an officer's right to continue questioning that the United States Constitution, as interpreted in *Davis,* does not require. For the reasons stated below, we hold that the federal underpinnings for *Russell* no longer exist, and the Texas Constitution does not support its holding. Because the officer was entitled to continue questioning, we reverse the suppression order.

Before dawn on September 8, 1992, Joe and Amanda Alvarado were shot and killed. That afternoon, their son-in-law, Scott Louis Panetti, was taken into custody. Texas Ranger Fred Cummings properly administered *Miranda* warnings, and Panetti voluntarily waived his rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Cummings began to question Panetti, recording the interview. Early in the questioning, the following conversation occurred:

RANGER CUMMINGS: Okay, what—what happened when you went nuts?

PANETTI: Should I be answering these questions without my lawyer, or does it matter, or I mean I—I give up, anyway.

RANGER CUMMINGS: Well, I understand you do. It's—I read you your rights, Scott, and you can talk if you want to. If you don't want to, you don't have to. The thing that I want to do, being a police officer, is I want to get this thing cleared

up and find out what really happened. Okay?

The best way I can do that right now is talk to you; okay? Do you want to go ahead and talk to me? I'd like to sit here and talk to you about it, let you tell me what the problem is and what happened, and I want to sit here and listen to them and make a few notes as you do it. Is that all right with you?

PANETTI: Yeah.

RANGER CUMMINGS: Okay.

Ranger Cummings continued the interrogation, and Panetti confessed to the murders. After the interrogation, Panetti consented in writing to the search of the bunkhouse where he lived.

Later that day, Panetti was again given his warnings and interrogated by Ranger Cummings and another Texas Ranger. He again confessed to the killings. After both oral statements were recorded, Panetti was taken before a magistrate and formally warned regarding his rights. *See* TEX.CODE CRIM.PROC. ANN. art. 15.17(a) (Vernon Supp.1994).

Panetti was indicted for the offense of capital murder. Following his arraignment, Panetti filed three motions to suppress all statements, confessions, or admissions obtained in the interrogations and any evidence resulting from his consent to search. Panetti argued that his statements and his consent to search were illegally obtained because the interrogating officer failed to narrow the scope of the interrogation after Panetti made an equivocal request for an attorney. The trial court held a pretrial hearing in accordance with *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and article 38.22, section 6 of the Texas Code of Criminal Procedure, with reference to the admissibility of Panetti's two oral statements and the physical evidence seized pursuant to the written consent to search. TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979). The trial court granted each of Panetti's motions.

In two points of error, the State contends that the trial court erred in finding that the statement made by Panetti to Ranger Cummings in the first interrogation amounted to an equivocal request for an attorney and that even if Panetti's statements did qualify as an equivocal request, Cummings narrowed sufficiently the scope of his interrogation to focus on Panetti's request. We need not address the State's first point of error, because even if Panetti made an equivocal request for counsel, we hold that Ranger Cummings' subsequent questioning was constitutionally permissible.

Our earlier opinion relied on *Russell v. State*, 727 S.W.2d 573 (Tex.Crim.App.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 119 (1987), which held that when a suspect makes an equivocal request for counsel, the interrogating officer must limit his questions to determining whether the suspect wishes to invoke his right to counsel. *Id.* at 575–76. *Russell* is part of a long line of Texas cases that attempted to apply the federal prohibition against compelled self-incrimination. *See, e.g. Upton v. State*, 853 S.W.2d 548, 552–53 (Tex.Crim.App.1993); *Robinson v. State*, 851 S.W.2d 216, 223–24 (Tex.Crim.App.1991), *cert. denied*, 512 U.S. ——, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Lucas v. State*, 791 S.W.2d 35, 45–46 (Tex. Crim.App.1989), *judgment vacated on other grounds*, 509 U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993); *Russell v. State*, 727 S.W.2d at 575–76; *Massengale v. State*, 710 S.W.2d 594, 597–98 (Tex.Crim.App.1986); *Huff v. State*, 678 S.W.2d 236, 240–43 (Tex. Crim.App.1984); *Ochoa v. State*, 573 S.W.2d 796, 800–801 (Tex.Crim.App.1978); *Beck v. State*, 681 S.W.2d 825, 826–27 (Tex.App.— Houston [14th Dist.] 1984), *rev'd on other grounds*, 712 S.W.2d 745 (Tex.Crim.App. 1986); *Goodnough v. State*, 627 S.W.2d 841, 843–45 (Tex.App.—San Antonio 1982, pet. ref'd).

These decisions rest on the federal constitution, and not on the Texas Constitution. *See Smith v. Illinois*, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Texas courts were, in the absence of further guidance from the Supreme Court, fashioning rules that remained true to the Supreme Court holdings and were in

accord with Fifth Circuit decisions. *See Thompson v. Wainwright*, 601 F.2d 768 (5th Cir.1979); *Nash v. Estelle*, 597 F.2d 513 (5th Cir.) (en banc), *cert. denied* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *Russell*, 727 S.W.2d at 575–76; *Goodnough*, 627 S.W.2d at 843–45.

*Davis* removed the federal foundation for the *Russell* rule. In *Davis* all nine justices agreed that an ambiguous request for counsel does not invoke *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which held that questioning must cease if the suspect asks for a lawyer. *Davis v. United States*, 512 U.S. ——, —— – ——, —— – ——, 114 S.Ct. 2350, 2356, 2363–64, 129 L.Ed.2d 362, 372–73, 382 (1994). The majority and concurring justices in *Davis* differed in the extent to which they would require officers to react to a suspect's ambiguous comments. The *Davis* majority has allowed interrogating officers to proceed with interrogation until the suspect clearly requests an attorney. *Id.* at —— – ——, 114 S.Ct. at 2356, 129 L.Ed.2d at 372–73. The four concurring justices advocated a more stringent policy. Once the suspect makes a statement that might reasonably be considered a request for a lawyer, they would require that the interrogating officer confine the questioning to clarifying whether the suspect meant to ask for an attorney. *Id.* at ——, 114 S.Ct. at 2364, 129 L.Ed.2d at 382. The majority recognized this limited questioning as an option, but chose not to require it as a constitutional rule, instead commending it as "good police practice." *Id.* at ——, 114 S.Ct. at 2356, 129 L.Ed.2d at 373.

Thus, under current federal law if a suspect makes an equivocal remark indicating only that he *might* want a lawyer, the officer is free to proceed with interrogation without clarifying the suspect's desire. *Davis*, at —— – ——, 114 S.Ct. at 2356–57, 129 L.Ed.2d at 373. The Supreme Court has encouraged clarifying questions, but has not required them. *Id.* The interview may continue until the suspect clearly and unambiguously requests counsel. *Id.* An officer's failure to seek clarification of an equivocal request for counsel does not invalidate a subsequent statement, provided the statement was voluntarily given after the subject was advised of his constitutional rights.

Now that the Supreme Court has removed *Russell*'s federal law underpinnings, its holding cannot stand as a matter of federal law. Texas courts can extend Texas Constitutional rights beyond their analogous federal counterparts. *See Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). But we see no reason to adopt the *Russell* rule as a matter of state law and to create greater rights on behalf of criminal suspects against the state than the United States Constitution requires.

In this case Ranger Cummings reminded Panetti about his right to stop the questioning. However, Cummings did not cease questioning, or limit his questioning to the subject of Panetti's desire for an attorney. He simply asked Panetti if it was okay for them to continue talking. Panetti said that was all right with him and did not request counsel. Under *Davis*, the Ranger's action was entirely appropriate because Panetti never clearly invoked his right to counsel. Accordingly, we sustain the State's second point of error, and reverse the suppression order.