IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 74,144






OBIE D. WEATHERS



v.



THE STATE OF TEXAS





ON DIRECT APPEAL


FROM BEXAR COUNTY






 Price, J., delivered the opinion for a unanimous Court. Hervey, J., did
not participate.


O P I N I O N



 In May of 2001, the appellant was convicted of capital murder. Tex. Penal Code §
19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of
Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge sentenced the
appellant to death. Art. 37.071 § 2(g). (1) Direct appeal to this Court is automatic. Art.
37.071 § 2(h). The appellant raises five points of error. We affirm.

I. Custodial Statements


 In his first and third points of error, the appellant claims that the trial court erred in
denying his pre-trial motion to suppress his inculpating custodial statements to the police
because he claims that (1) the officers violated his Fifth Amendment right to have an
attorney present during questioning and (2) the statements did not comply with Texas Code
of Criminal Procedure Article 38.22. He argues that he invoked his right to counsel
immediately prior to making each statement. The first point of error concerns his first
custodial statement, admitted during the guilt phase of the trial, and the third point of error
concerns his second custodial statement, admitted during the punishment phase of the trial.

A. Facts


 On February 15, 2000, officers from the San Antonio Police Department arrested
the appellant at his place of employment pursuant to a warrant on charges of aggravated
robbery and aggravated sexual assault. When the officers attempted to execute the arrest
warrant, he resisted, and a struggle ensued. Both the officers and the appellant sustained
injuries from the struggle. After the officers finally managed to arrest him, they
transported him to the police station. 

 Detectives Thomas Matjeka and Danny Gonzales interviewed the appellant at the
police station. Gonzales advised the appellant of his rights before the interview began, and
then asked the appellant if he understood them. The appellant responded by asking "You
mean I can call a lawyer if I want?" Gonzales told the appellant that he could call a lawyer at
any time, remain silent, or continue speaking with police. The appellant stated that he
understood, and that was the end of the discussion regarding the appellant's question. He
did not request an attorney. The detectives continued with the interview, and eventually
reduced the appellant's oral statements to a single written statement. In that statement, the
appellant confessed to the robbery of Ernest Johnson, the robbery at Pierce's Ice House,
and the shooting and killing of Ted Church. (2)

 During the interview, the detectives also questioned the appellant about the
uncharged robbery and murder of Norma Petrash. At first, the appellant denied that he
committed the Petrash murder. He claimed that an associate of his, a man by the name of
"Old School," went into the house and shot Petrash while he waited outside the house on
the porch steps. (3) Then the appellant told the detectives that he did not understand why he
was being accused of the Petrash murder, and that he felt that he should not admit to it
because his mother told him never to admit to anything he did not do. Matjeka told the
appellant that he should be a man and admit to what he had done. The appellant then asked
Matjeka, "What you said about a lawyer earlier, what would a lawyer tell me to do?" 
Matjeka stated that "certain lawyers would tell [you] to stop talking to us and not tell us
anything else," but that some lawyers "would tell [you] to simply tell the truth." Then
Matjeka told the appellant that he could not say what a lawyer would tell the appellant to do
because he did not know who his lawyer would be. After these statements, Matjeka asked
the appellant if he still understood his rights, and if he wanted to continue to talk. The
appellant replied that he did, and he did not request an attorney. The interview continued,
and eventually the appellant confessed to the robbery and murder of Petrash. The
detectives reduced this confession to a written statement as well. 

B. Article 38.22


 Article 38.22 sets out the requirements for the admission of an accused's
statements. Under this subsection 2 of Article 38.22, written statements are not admissible
unless it is shown on the face of the statement that the appellant received the appropriate
warnings (1) that the accused has the right to remain silent, (2) that anything he says may be
used against him at his trial or in court, (3) that he has the right to an attorney to be present
or to advise him during questioning, (4) that an attorney will be provided before questioning
if he cannot afford one, (5) and that he has the right to terminate the interview at any time. 
Tex. Code Crim. Proc. art. 38.22, § 2. The face of the statement must also show that the
accused waived all these rights. 

 The appellant argues that the statements admitted during his trial did not comply with
Article 38.22 subsections 2(a)(3) and 2(a)(4). These subsections require that the face of
the statement contain notice to the accused that he has the right to have an attorney present
and that if he is unable to afford an attorney, one will be provided for him before
questioning. The record reveals that both statements contain the necessary statutory
warnings, and thus, the statements complied with Article 38.22.

C. The Fifth and Fourteenth Amendments


 The Fifth and Fourteenth Amendments' prohibitions against compelled self-incrimination require that custodial interrogation be preceded by notice to the arrestee that
he has the right to remain silent and to have an attorney present during questioning. 
Edwards v. Arizona, 451 U.S. 477, 481-82 (1981). Once a suspect invokes his right to
counsel, all interrogation must stop until an attorney is provided, or until the suspect
reinitiates conversation. Edwards, 451 U.S. at 484-85; Miranda v. Arizona, 384 U.S. 436,
474 (1966). However, a suspect must unambiguously and unequivocally invoke his right to
counsel before the police must stop the interrogation. Davis v. United States, 512 U.S.
452, 458-61 (1994). If the suspect might be invoking the right to counsel, the officer does
not need to cease questioning the suspect. Id. at 459. 

 In Dinkins v. State, 894 S.W.2d 330, 352 (Tex. Crim. App. 1995), we explained that
while there are no "magical words" required to invoke an accused's right to counsel, Davis
requires at a minimum "that the suspect express a definite desire to speak to someone and
that [that] person be an attorney." When reviewing the alleged invocations of the right to
counsel, the reviewing court must look to the totality of the circumstances surrounding the
interrogation, as well as the alleged invocation to determine whether a statement can be
construed as an actual invocation of one's right to counsel. Dinkins, 894 S.W.2d at 351. 
While a suspect "need not speak with the discrimination of an Oxford don," he must
articulate his desire to have counsel present to the degree that "a reasonable police officer
in the circumstances would understand the statement to be a request for an attorney." 
Davis, 512 U.S. at 459 (internal quotation marks omitted). Mere mention of the word
"lawyer" or "attorney," without more is not enough to invoke one's right to counsel. 
Dinkins, 894 S.W.2d at 351 (citations omitted). 

 The suspect in Dinkins made two ambiguous statements to the police: (1) "Maybe I
should talk with someone," and (2) "What [would] a lawyer would tell [me] to do?" Id. at
350. In that case, this Court held that neither statement constituted an invocation of the
suspect's right to counsel. Id. at 352. The first statement was "more ambiguous than the
statement in Davis" because he did not even specify the identity of the person to whom he
wanted to speak. Ibid. The second statement also did not rise to an invocation of the right
to counsel. Ibid. (citing Russell v. State, 727 S.W.2d 573, 576 (Tex. Crim. App. 1987)
(the suspect's question to the police officers "whether they thought the presence of an
attorney was necessary" did not constitute an invocation of his right to counsel)). 

 Similar to the statements made in Davis and Dinkins, the statements made by the
appellant in this case do not constitute unambiguous, unequivocal requests for an attorney. 
His first statement, "You mean I can call a lawyer if I want?" is merely a question that
attempts to clarify his understanding of the rights that had just been read to him. His
second statement, "What you said about a lawyer earlier, what would a lawyer tell me to
do?" is practically identical to the statement in Dinkins, "What [would] a lawyer tell [me] to
do?" that we held did not rise to an invocation of the right to counsel. Dinkins, 894 S.W.2d
at 350, 352. Furthermore, the officers responded to both of the appellant's ambiguous
statements with clarifying questions to determine whether he actually wanted an attorney. 
They asked if he understood his rights, and if he wanted to continue talking with them. The
appellant responded in the affirmative both times. He did not invoke his right to counsel;
therefore, the trial court properly admitted both of the appellant's statements into evidence. 
Points of error one and three are overruled. 

II. Failure to Request Limiting Instructions


 In the appellant's second point of error, he contends that he received ineffective
assistance of counsel because his attorney, for no apparent strategic reason, failed to
request either a limited admissibility instruction or a reasonable doubt instruction with
respect to uncharged misconduct offered into evidence by the State against the appellant. 
To prevail on a claim of ineffective assistance of counsel, the appellant must satisfy the
two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Specifically,
he must show that counsel's performance was deficient, and that he was prejudiced by
counsel's deficient performance. To demonstrate prejudice, the appellant "must show that
there is a reasonable probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different." Id. at 694. There is "a strong presumption that
counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id.
at 689. 

 The appellant relies upon this Court's decision in Ex parte Varelas, 45 S.W.3d 627
(Tex. Crim. App. 2001), in support of his argument. In that case, we held that, once
extraneous acts have been ruled admissible, and if the defendant so requests, the jurors
should be instructed as to the limits on their use of evidence of extraneous acts. Id. at 631. 
The "beyond a reasonable doubt" instruction tells the jury that it should not consider
evidence of uncharged misconduct unless it believes beyond a reasonable doubt that the
defendant committed the act. Ibid. The "limiting" instruction applies when the State is
allowed to introduce evidence of uncharged misconduct for a limited purpose, and the trial
court instructs the jury that they must limit their consideration of the evidence. Ibid. If the
defendant's trial counsel requests either of these instructions at trial, he is entitled to it,
and the trial court errs in denying the request. Ibid. 

 In Varelas, the trial counsel failed to ask for "beyond a reasonable doubt" and
"limiting" instructions, and we held that such conduct fell below an objective standard of
reasonableness because reasonable counsel would have requested the instructions, given
the facts in that case. Id. at 632. We found that the applicant demonstrated prejudice
because the charged offense was similar in nature to the uncharged misconduct, and that
this evidence was likely considered as direct evidence of the applicant's guilt. Id. at 634-35. The harm was sufficient to undermine our confidence in the outcome, and there was a
reasonable probability that, but for the errors committed by the applicant's attorneys, the
result of the trial would have been different. Id. at 363. 

 However, Varelas is factually distinguishable from the appellant's case because,
even assuming that trial counsel's failure to request the instructions was deficient, the
appellant failed to demonstrate that any prejudice resulted. Varelas did not establish
automatic ineffective assistance of counsel for failure to request such instructions. 
Without more, we cannot conclude that the appellant was prejudiced by his attorney's
failure to request the instructions. Point of error two is overruled.

III. Eighth Amendment Claim


 In his fourth point of error, the appellant claims the Texas death penalty scheme
violates the Eighth Amendment ban against cruel and unusual punishment. Identical
arguments have been addressed and rejected by this court before, and the appellant gives us
no reason to revisit those decisions here. Sells v. State, No. 73,993, Slip. Op. At 32-33,
2003 WL 1055328, *14-15 (Tex. Crim. App. March 12, 2003); Ladd v. State, 3 S.W.3d
547 (Tex. Crim. App. 1999). Point of error four is overruled.

IV. Lesser-Included Offense Instruction


 In his fifth point of error, the appellant contends that the trial court erred by failing
to instruct the jury on the lesser-included offense of felony murder. To establish that the
appellant was entitled to a jury charge on a lesser-included offense, he must satisfy the
Royster test as refined in Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.
1993). An instruction on a lesser-included offense is warranted when (1) the lesser
included offense is included within the proof necessary to establish the offense charged
and (2) some evidence exists in the record that would permit a rational jury to find that if
the appellant is guilty, he is guilty only of the lesser offense. Ibid. Felony murder is a
lesser-included offense of capital murder. Id. at 673 (citing Creel v. State, 754 S.W.2d
205, 211 (Tex. Crim. App. 1988)). "The distinguishing element between felony murder and
murder is the intent to kill." Fuentes v. State, 991 S.W.2d 267, 272 (Tex. Crim. App.
1999). Capital murder includes an intentional murder committed during the course of
committing one of the enumerated offenses in the statute. Ibid. A felony murder includes
an unintentional murder committed during the course of a felony. Ibid. In felony murder
the culpable mental state is supplied by the underlying felony. 

 In this case, the appellant was entitled to an instruction on the lesser-included
offense of felony murder if there was some evidence that the appellant had the intent to
commit the robbery, but not to cause the death of the victim. Ibid. The appellant cites the
following portion of his first custodial statement in support of his argument that a felony
murder instruction was improperly omitted from the charge:

 I was told [sic] all the black folks to just mind their own business and then I
robbed the place. I took some money from a white dude and some from the
cash register. It was about a hundred something dollars. There was some
white guy sitting down at the bar and I knew he was going to do something. 
He was acting like he was drunk. I started backing away to leave when the
white guy grabbed me and started wrestling with me kind of like y'all did
when y'all arrested me only y'all got the job done. He started wrestling me
and I just let loose with the gun about two or three times. I was kind of
scared, that's why I shot the man. My - my mind was gone at the time so
that's why I shot him. To get him off me so I could leave.

Nothing in this statement demonstrates or even implies that the appellant intended only to
rob the decedent. Although his statement may explain why he shot Church, it does not show
that he did not knowingly or intentionally do so. The appellant plainly stated that he "let
loose with the gun about two or three times" because he was scared and wanted to get
Church off of him so he could leave. In addition, the jury was instructed on the lesser-included offense of murder under Texas Penal Code Section 19.02(b)(1), intentionally or
knowingly causing the death of an individual, which it rejected. 

 The appellant also seems to argue that his first written statement only confessed to
the issue and act of felony murder because it states that he murdered Church after the
commission of the aggravated robberies. This argument is also without merit. This Court
has defined the phrase "in the course of committing" as used in Section 19.03(a)(2) to
mean "conduct occurring in an attempt to commit, during the commission of or in the
immediate flight after the attempt or commission of the offense." McGee v. State, 774
S.W.2d 229, 234 (Tex. Crim. App. 1989); Riles v. State, 595 S.W.2d 858, 862 (Tex. Crim.
App. 1980). Whether the appellant murdered Church during the course of robbing him, or
in the immediate flight therefrom, his conduct did not warrant a charge on the lesser-included offense of felony murder. Point of error five is overruled. 

 We affirm the judgment of the trial court. 

 

Delivered: October 22, 2003.

Do Not Publish.
1. Unless otherwise indicated this and all future references to articles refer to the Texas Code of
Criminal Procedure.
2. Ted Church, the decedent, was still alive at the time of the interview, but he was not expected
to survive. He eventually died from his wounds on March 2, 2003.
3. The police were unable to locate anyone by that name.