Opinion issued December 9, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-07-00853-CR

———————————

Gamaliel H.
Gonzalez, Appellant

V.

The State of Texas, Appellee



 



 

On
Appeal from the 230th District Court

Harris
County, Texas



Trial Court Case No. 1103637

 



 

MEMORANDUM OPINION

Appellant, Gamaliel H. Gonzalez, was charged by indictment with murder.[1]  Appellant pleaded not guilty.  A jury found appellant guilty as charged and
assessed punishment at 45 years’ confinement. 
In two points of error, appellant challenges the trial court’s denial of
his motion to suppress his custodial statement during the guilt-innocence phase
and the trial court’s admission of an extraneous offense during the punishment
phase.

We affirm.

                                                                                                                                                                
Background

On February 7, 2007, Erica Garcia, complainant, met two of
her friends at a nightclub in downtown Houston. 
Appellant and some of his friends arrived at the club later that
night.  One of appellant’s friends did
not like Garcia.

When the club closed, both groups left.  Appellant and his friends discovered that
someone had spit on their vehicle. 
Appellant retrieved a gun from the vehicle and stated he was going to
shoot Garcia.  One of appellant’s friends
told him to get in the car, and he did.

Garcia and her friends left the club.  Garcia was alone in her car.  Her two friends followed her in another
car.  They came to a stop at a red stop
light with Garcia’s friends behind her in the same lane.  The vehicle appellant was in came to a stop
behind these two cars, and appellant and another person exited the
vehicle.  Appellant approached the
passenger’s side of Garcia’s car, began hitting the passenger-side window with
his gun, and shot into the car, hitting Garcia in the head and killing her.

Appellant then approached Garcia’s friend’s car, hit the
passenger-side window of that car with his gun, shouted expletives at Garcia’s
friends, and then returned to his vehicle. 
Appellant and his friends drove off. 
Garcia’s friends called the police. 
Within fifteen minutes, a police officer pulled over the vehicle in
which appellant was riding, and appellant was taken into police custody.

Appellant arrived at the police station around 5:00 A.M.
on the morning of February 8, 2007.  Around
12:30 P.M., appellant gave a recorded statement in which he was read his Miranda and statutory rights and waived
his right to an attorney.  In the
statement, he described the events surrounding the shooting and also described
an incident a few weeks earlier involving a confrontation with Garcia in which
appellant had fired a shot into the air.

Over two months before trial, appellant served on the
State a request for notice of intent to offer extraneous conduct. In its
discovery order, the trial court set a deadline, requiring the State to provide
notice of extraneous offenses ten days before trial.  Twenty days before trial, the State filed a
notice of intent to use evidence of a prior conviction.  The portion of the form identifying the
State’s intent to offer extraneous offenses was left blank.  Four days before trial, the State filed
another notice, this time stating, “The State intends to introduce evidence
that a few weeks before the fatal shooting of Erica Garcia, the Defendant shot
in the direction of the complainant with a deadly weapon, namely, a firearm,”
and indicating the offense took place in Harris County.  The State had in its files a statement by one
of Garcia’s friends describing the event.

Three days before the trial, appellant filed a motion to
suppress his custodial statement arguing, among other things, that appellant
had made multiple requests to speak to an attorney before he gave his statement.  The trial court considered appellant’s motion
at trial.  During the hearing on the
motion, appellant testified that he was kept in one room for several
hours.  Various people came in to
question appellant.  He was moved to
another room and questioned for about another hour.  Appellant testified that—prior to his
recorded statement in which he waived his right to an attorney—he asked at
least four times for an attorney but was never provided one and the questioning
continued after each of these requests.  Appellant
testified that, early in the time he was at the police station:

I asked them what -- if I was arrested and they said:
You’ll know.  And then I said: Well, if I
am, I need to talk to an attorney, I need to make a phone call if I am
arrested.  And one of the officers said:
We’ll let you know.  I assume it was an
officer, but I don’t know if it was or not.

Appellant testified that later someone was asking him
questions.  “And I said: Don’t I need an
attorney? Am I under arrest? What’s going on? And they didn’t say
anything.  They just walked out of --
walked outside the room.”  Later still,
appellant asked a person he believed to be an officer, “Should I have an
attorney in here?  And he -- once again,
he said: We will get to it.  And he asked
me a couple of other questions.”  He
testified that, in the hour before he gave his statement, he again asked for an
attorney.

Sergeant J. Brooks, one of the detectives present at
appellant’s recorded confession, testified that he first spoke to appellant around
10:50 in the morning.  Sergeant Brooks
testified that he was not aware of any request by appellant for an attorney and
never heard appellant ask for one.  

The trial court denied appellant’s motion to suppress but
also ordered certain portions of the confession to be redacted.  One of these portions concerned appellant’s
discussion of the incident involving a confrontation with Garcia in which
appellant had fired a shot into the air.

During the punishment phase, the State sought to introduce
the confrontation with Garcia as evidence of an extraneous offense committed by
appellant.  Appellant objected on the
grounds that he had not received sufficient notice.  Appellant conceded that he knew of the
relevant evidence for at least two months prior to trial.  The trial court overruled appellant’s
objection.

On appeal, the State filed a motion with the Court seeking
to abate the appeal and to require the trial court to file findings of fact and
conclusions of law related to the denial of the motion to suppress.  We granted the motion.  Upon receiving the proper findings of fact
and conclusions of law, we reinstated the case in March 2010.

                                                                                                                                                  
Motion to Suppress

In his first point of error, appellant argues that the
trial court abused its discretion by denying his motion to suppress his
custodial statement.

A.              
Standard of Review

In
a motion to suppress hearing, the State has the burden of showing, by a
preponderance of the evidence, that a defendant knowingly, intelligently, and
voluntarily waived his Miranda
rights.  Joseph v. State, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010).

Under the Fifth
Amendment of the United States Constitution, an accused has the right to have
an attorney present during custodial interrogation.  Edwards v. Arizona, 451 U.S. 477, 481–82,
101 S. Ct. 1880, 1883 (1981) (noting that that right was first declared in Miranda
decision); State v. Gobert, 275 S.W.3d 888, 892 (Tex. Crim. App. 2009).  Once an accused has invoked that right,
police interrogation must stop until counsel has been made available or the
accused himself initiates a dialogue with the police.  Edwards, 451 U.S. at 484–85, 101 S.
Ct. at 1885; Gobert, 275 S.W.3d at 892.

However, a person in
custody must unambiguously and unequivocally invoke his right to counsel before
interrogation must cease.   Davis v.
United States, 512 U.S. 452, 458–62, 114 S. Ct 2350, 2354–57 (1994).  Not every mention of a lawyer will invoke the
right to the presence of counsel during questioning.  Gobert, 275 S.W.3d at 892.  An ambiguous or equivocal statement regarding
counsel does not require officers to halt the interrogation or even to seek
clarification.  Davis, 512 U.S. at
461–62, 114 S. Ct. at 2356; Gobert, 275 S.W.3d at 892.

Whether the particular
mention of an attorney constitutes a clear invocation of the right to counsel
depends on the statement itself and the totality of the surrounding
circumstances.  Gobert, 275 S.W.3d
at 893.  The test is an objective one:
“whether a reasonable police officer, under similar circumstances, would have
understood the statement to be a request for an attorney or merely one that might
be invoking the right to counsel.”  Reed
v. State, 227 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2006, pet.
ref’d) (citing Dinkins v. State, 894 S.W.2d 330, 351 (Tex. Crim. App.
1995)).  “The suspect ‘must articulate
his desire to have counsel present sufficiently clearly that a reasonable
police officer in the circumstances would understand the statement to be a
request for an attorney.’”  Gobert,
275 S.W.3d at 893 (quoting Davis, 512 U.S. at 459, 114 S. Ct. at 2355). 

In
reviewing the trial court’s ruling on a motion to suppress evidence, we apply a
bifurcated standard of review, giving almost total deference to the trial
court’s determination of historic facts and reviewing de novo the court’s
application of the law of search and seizure to those facts.  Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  If the issue involves the credibility of a
witness, such that the demeanor of the witness is important, then great
deference will be given to the trial court’s ruling on that issue.  Amador
v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  In a motion to suppress hearing, the trial
court is the sole trier of fact and judge of the credibility of the witnesses
and the weight to be given to their testimony. 
State v. Ross, 32 S.W.3d 853,
855 (Tex. Crim. App. 2000).  Accordingly,
the trial court may believe or disbelieve all or any part of a witness’s
testimony, even if that testimony is not controverted.  Id.  We
will uphold the trial court’s ruling on a motion to suppress if that ruling was
supported by the record and was correct under any theory of law applicable to
the case.  Id. at 856. 


As
here, when the trial court files findings of fact with its
ruling on a motion to suppress, an appellate court does not engage in its own
factual review, but determines only whether the record supports the trial
court’s fact findings.  Romero v.
State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  Unless the trial court abused its discretion
by making a finding not supported by the record, we will defer to the trial
court’s fact findings and not disturb the findings on appeal.  Cantu v. State, 817 S.W.2d 74, 77
(Tex. Crim. App. 1991).  On appellate
review, we address only the question of whether the trial court properly
applied the law to the facts.  Romero,
800 S.W.2d at 543.

B.              
Analysis

Appellant argues that, before he gave his statement, he invoked
his right to have an attorney present at least four times.  Admissibility of a confession based on a
claim of a violation of a defendant’s invocation of his right to have an
attorney present depends on two distinct inquiries: (1) whether the accused
actually invoked his right to counsel; and (2) if the right was invoked,
whether the accused waived that right.  Russell v. State, 727 S.W.2d 573, 575
(Tex. Crim. App. 1987).  We first must
address whether the trial court abused its discretion in determining that
appellant did not invoke his right to counsel prior to giving his Mirandized statement in which he waived
that right.

During the hearing on the motion to suppress, appellant
testified that prior to his recorded statement, in which he waived his right to
an attorney, he had asked at least four times for an attorney but was never
provided one and that the questioning continued after each of these
requests.  Sergeant Brooks testified that
he first spoke to appellant around 10:50 in the morning.  He also testified that he was not aware of
any request by appellant for an attorney and never heard appellant ask for one.

In its findings of fact and conclusions of law, the trial
court made the following findings:

3.       Officers
at the police station provided the defendant with food and beverages and
allowed him to use the restroom several times.  Officer John Brooks provided the defendant
with a blanket when he indicated he was cold.  Brooks also allowed the defendant to speak to
his friend, the Hummer's driver.

4.       Detective
Phil Waters informed the defendant of his rights provided by Miranda v. Arizona and article 38.22 of
the Texas Code of Criminal Procedure. 
The defendant indicated to the officer that he understood his rights and
he voluntarily waived them.  The defendant
then gave a voluntary statement.

5.       The
defendant never requested an attorney. 
He was not handcuffed during the interview and the officers never used
any intimidation, coercion, or force against the defendant.  Nor did the officers promise the defendant
anything in exchange for his statement.

. . . .

7.       The
testimony of the police officers and other State’s witnesses was true and is
found to be credible.

8.       The
testimony of the defendant was not true and is not found to be credible.

The trial court reached the following conclusions:

2.       The
officers correctly informed the defendant of his rights and the defendant
understood each one of his rights. The defendant voluntarily waived his rights
and voluntarily spoke to the officers during the recorded interview.

3.       The
defendant did not invoke his right to counsel.

Appellant acknowledges that the trial court found that
appellant’s testimony was not credible and that he never requested an
attorney.  Appellant also acknowledges
that this finding, based on the trial court’s evaluation of appellant’s
credibility, is given almost total deference. 
See Amador, 221 S.W.3d at 673.  Appellant argues, however, that there is
error because the trial court based its finding that appellant did not invoke
his right to counsel upon the testimony of Officer Brooks, who was not in
appellant’s presence for three out of the four times appellant claimed he invoked
his right to counsel.  We disagree with
this argument.

The trial court’s findings state that the trial court did not
find appellant credible and did not believe appellant requested an
attorney.  The findings do not state that
the determination that appellant did not invoke his right to counsel was based
on Officer Brooks’s testimony.  It was
within the trial court’s discretion to disbelieve any or all of appellant’s
testimony.  See Ross, 32 S.W.3d at 855.  Without
the testimony of appellant, there was no evidence that appellant invoked his
right to counsel prior to giving his Mirandized
statement in which he waived that right.

There is nothing else in the record that shows that appellant
did not knowingly, intelligently, and voluntarily waive his Miranda rights.  The record supports the trial court’s finding
that appellant was provided with food and drink on the officers’ initiative;
that appellant was provided at least one restroom break when it was requested
and a blanket when he said he was cold; and that there was no evidence of the
officers using intimidation, coercion, or force against the defendant or of the
officers offering appellant anything to induce the confession.  We hold that the trial court did not abuse
its discretion in denying appellant’s motion to suppress.

We overrule appellant’s first point of error.

                                                                                                                              
Extraneous Offense Evidence

In his second point of error, appellant argues that the
trial court abused its discretion by admitting evidence of a prior extraneous
offense when the State failed to give timely notice of its intent to introduce
the evidence.

A.              
Standard of Review

We review the trial court’s ruling as to the admissibility
of extraneous offense evidence under an abuse of discretion standard.  Brooks
v. State, 76 S.W.3d 426, 430 (Tex. App.—Houston [14th Dist.] 2002, no
pet.).

B.              
Analysis

Over two months before trial, appellant served on the
State a request for notice of intent to offer extraneous conduct. In its
discovery order, the trial court set a deadline, requiring the State to provide
notice of extraneous offenses ten days before trial.  The State filed a notice of intention to use
evidence of a prior conviction twenty days before trial.  The portion of the form identifying the
State’s intent to offer extraneous offenses was left blank.  Four days before trial, the State filed
another notice, this time stating, “The State intends to introduce evidence
that a few weeks before the fatal shooting of Erica Garcia, the Defendant shot
in the direction of the complainant with a deadly weapon, namely, a firearm,”
and indicating the offense took place in Harris County.  The State had in its files a statement by one
of Garcia’s friends describing the event. 
This event is the same one that was described by appellant in the
redacted portion of his confession.

During the punishment phase, the State sought to introduce
evidence of the extraneous offense. 
Appellant objected on the grounds that he had not received sufficient
notice.  Appellant conceded that he knew
of the relevant evidence for at least two months prior to trial.  The trial court overruled appellant’s
objection.

Section 3(g) of article 37.07 of the Texas Code of
Criminal Procedure provides:

On timely request of the defendant, notice of intent to
introduce evidence under this article shall be given in the same manner
required by Rule 404(b), Texas Rules of Evidence.  If the attorney
representing the state intends to introduce an extraneous crime or bad act that
has not resulted in a final conviction in a court of record or a probated or
suspended sentence, notice of that intent is reasonable only if the notice
includes the date on which and the county in which the alleged crime or bad act
occurred and the name of the alleged victim of the crime or bad
act.  The requirement under this subsection that the attorney
representing the state give notice applies only if the defendant makes a timely
request to the attorney representing the state for the notice. 

Tex. Code
Crim. Proc. Ann. art. 37.07 § 3(g) (Vernon Supp. 2010).  The notice requirement under Rule 404(b) of
the Texas Rules of Evidence requires that, upon request, “reasonable notice”
must be given “in advance of trial.”  Tex. R. Evid. 404(b).  The purpose of section 3(g) is to avoid
unfair surprise and to enable the defendant to prepare to answer the
extraneous-offense evidence.  Apolinar v. State, 106 S.W.3d 407, 414
(Tex. App.—Houston [1st Dist.] 2003), aff’d
on other grounds, 155 S.W.3d 184 (Tex. Crim. App. 2005).

Appellant argues that notice four days in advance of trial
is not “reasonable notice” as required under Rule 404(b) and, by extension,
Section 3(b) of Article 37.07.  We do not
need to determine whether four days’ notice is reasonable, because, even if it
is not, we hold that there is no evidence of harm.

Even when the State fails to provide any notice of its
intent to introduce evidence of extraneous offenses, an appellant court must
determine whether the improper admission of evidence caused the appellant
harm.  Hernandez v. State, 176 S.W.3d 821, 824 (Tex. Crim. App.
2005).  Admitting evidence without timely
notice does not involve constitutional error. 
McDonald v. State, 179 S.W.3d
571, 578 (Tex. Crim. App. 2005). 
Accordingly, we disregard any error that does not affect a substantial
right.  Tex.
R. App. P. 44.2(b); Apolinar,
106 S.W.3d at 414.  When, as here,
appellant only objected to the lack of notice—and not to the admissibility of
the uncharged conduct itself—“we look only at the harm that may have been
caused by the lack of notice and the effect the lack of notice had on the
appellant’s ability to mount an adequate defense.”  McDonald,
179 S.W.3d at 578.

During the hearing on appellant’s objections to the
admissibility of the extraneous offense evidence, the following exchange
occurred:

The Court: So the Court is abundantly clear, you
have known about this for at least two months. 
Is that correct?

[Appellant’s Counsel]: That is correct.  [State’s counsel] is correct that we have had
[appellant’s confession discussing the offense].

The Court: There is no surprise about the conduct?

 [Appellant’s
Counsel]: There is no surprise . . . .

Because appellant admitted that he knew about the
offense for two months and was not surprised by the introduction of the
evidence, we hold that appellant was not harmed by any failure of the State to
provide reasonable notice in advance of the trial.

We overrule appellant’s second point of error.

                                                                                                                                                                   
Conclusion

We affirm the judgment of the trial court.

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Keyes, Higley, and Bland.

Do not publish.   Tex. R.
App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 19.02(b)
(Vernon 2003).