**Affirmed and Opinion filed June 11, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00017-CR

### ROBERT TAYLOR WILLIAMS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1225261**

## O P I N I O N

Appellant Robert Taylor Williams appeals his conviction for murder, asserting that the trial court erred in overruling his motions to suppress an in-court identification and his custodial statement and in making certain other evidentiary rulings. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the felony offense of murder to

which he pleaded, "not guilty." The indictment contained an enhancement paragraph, alleging a prior felony conviction.

Appellant filed a motion to suppress a witness's in-court identification of him. Appellant also filed several other motions to suppress, all of which related to recorded statements he made to officers during custodial interrogation. After holding hearings on these matters, the trial court denied all of these motions.

The State presented evidence that appellant and the complainant were walking along some railroad tracks when they got into an argument; appellant pulled a revolver from the waistband of his pants and shot the complainant three times. Although the complainant fell to his knees, appellant shot the complainant three more times and fled from the scene, where the complainant eventually died. As appellant fled from the scene, he passed within an arm's length distance of a woman who had observed the entire incident as she walked her dogs near the railroad tracks. Another witness, who was walking from a nearby store, also saw the shooting. A third witness claimed to have seen appellant running from the direction where gunshots were heard. After talking to these witnesses, responding law enforcement officers developed appellant as a suspect.

An investigating officer compiled a photo array, containing appellant's photo along with five others. One of the witnesses who had seen the shooting knew the complainant and positively identified appellant as the shooter from the photo array; this witness also identified appellant in court as the shooter. The other eyewitness, who was walking her dogs when she saw the events unfold, failed to make a positive identification, claiming to be too scared of retaliation if she identified the shooter. The third witness positively identified appellant's photo from the array, indicating the man in the selected photo was the person she saw running from the direction on the railroad tracks where she heard gunshots.

2

Eventually, officers obtained an arrest warrant for appellant in connection with the shooting. Appellant contacted an investigating officer several times by voicemail, indicating his desire to speak with the officer and "clear his name." Appellant agreed to go with officers to the police station to give a statement.

An officer conducted a recorded custodial interview with appellant. Although appellant raised a number of objections to the admission of the statement into evidence, the trial court overruled those objections. The redacted recorded statement was played in open court.

The jury found appellant guilty as charged and found the enhancement paragraph to be true. Appellant was sentenced to fifty years' confinement.

## DENIAL OF MOTION TO SUPPRESS

In appellant's first and fourth issues, appellant challenges the trial court's denial of two of his motions to suppress. We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We afford the same amount of deference to the trial court's application of the law to facts if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* We review de novo the trial court's application of the law to facts if resolution of those ultimate questions does not turn on an evaluation of credibility and demeanor. *Id.* When, as in this case, there are no written findings of fact in the record, we uphold the trial court's ruling on any theory of law applicable to the

3

case and presume the trial court made implicit findings of fact in support of its ruling so long as those findings are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). If supported by the record, a trial court's ruling on a motion to suppress will not be overturned. *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

### In-Court Identification

In his first issue, appellant asserts the trial court erred in denying his motion to suppress witness Molly Gomez's in-court identification of him. Appellant asserts the use of the photo array was impermissibly suggestive. An in-court identification is inadmissible if it has been tainted by an impermissibly suggestive pre-trial identification. *Ibarra v. State*, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).

The record of the hearing on the motion reflects that Gomez saw appellant shoot the complainant during an argument; Gomez claimed to have had no difficulty getting a good look at him as he fled the scene, passing by her within an arm's reach. At the pre-trial hearing, Gomez identified appellant in the courtroom as the person she saw shoot the complainant. According to the record, Officer Waters compiled a photo array containing six photos, including appellant's photo in position two. Gomez met with the officer at the police station to view the photo array on the day of the shooting. Although Gomez claimed to have recognized appellant's photo in the photo array, she declined to identify him as the shooter because she did not know if he had been apprehended and she was scared that he or others would return in retaliation and harm her. Instead, she picked a photo in position three as the shooter. Officer Waters testified that Gomez visibly vacillated between the photos in positions two and three and appeared upset by the identification process. It is undisputed that Officer Waters, believing Gomez's

4

identification to be tainted, then told her that appellant was a suspect and indicated that appellant's photo was in position two in the photo array. As reflected in the record of the suppression hearing, Gomez admitted to the officer that she knew the shooter's photo was in position two but that she was too afraid to identify him as the shooter. Several days after the incident, Officer Waters showed Gomez the same photo array at Gomez's house, along with a single photo of appellant; Gomez did not identify anyone from the photo array, again admitting to the officer that she was too scared to make an identification. Gomez testified that the officer had no influence in helping her identify appellant in court at the pre-trial hearing; she claimed to have based her identification of appellant on what she observed on the day of the shooting. According to the record at the suppression hearing, the State informed the trial court that it did not intend to ask Gomez to make an in-court identification of appellant unless the defense opened the door to such testimony. The trial court overruled appellant's motion.

At trial, Gomez was not asked to make an in-court identification of appellant. She described for the jury the events that she saw and the shooter's appearance and clothing, at times, referring to appellant as "the defendant" and testifying that she saw "the defendant" shoot the complainant. The record does not reflect that appellant asserted any objection to Gomez's references to appellant as "the defendant" until after the State had finished its direct examination of Gomez. Just before cross-examination of Gomez, appellant complained of Gomez's references to appellant as "the defendant" and sought to cross-examine Gomez about the tainted pre-trial identification procedure involving the photo array asserting, "I'm not saying that's in any way a violation of your ruling last week. I understand you've denied my motion to suppress in-court identification." In response, the State claimed, "To respond for the record, we intentionally did not

5

ask this witness to identify [appellant] in court. We did not try to elicit that response to that, so the record is clear, so at this time we will object and say that his request is untimely." The trial court did not rule on the request. On cross-examination, Gomez testified to Officer Waters's identifying appellant's photo in position two of the photo array.

In her testimony, Gomez referred to appellant as "the defendant" who shot the complainant. On appeal, appellant characterizes this testimony as an in-court identification that should have been suppressed because it was tainted by impermissibly suggestive pre-trial procedures. But Gomez was not asked to make, and did not make, an in-court identification of appellant at trial; appellant admits as much on appeal. *See, e.g.*, *Doby v. State*, 455 S.W.2d 278, 280–81 (Tex. Crim. App. 1970) (overruling complaint that witnesses made in-court identifications of an accused when the record reflected that they were unable to positively identify the accused in a pre-trial photo identification procedure and that the witnesses did not identify appellant in the courtroom in their testimony even though they were permitted to testify to similarities between appellant and one of the robbers). But even if we presume, without deciding, that Gomez's references to appellant as the defendant constitute an in-court identification and that the pretrial procedures were unduly suggestive and tainted Gomez's identification, there has been no harmful error. Appellant's presence at the scene of the murder with the complainant was undisputed and another witness, whose in-court identification appellant does not challenge on appeal, positively identified appellant in court as the person who shot the complainant. *See Williams v. State*, 477 S.W.2d 885, 888 (Tex. Crim. App. 1972) (concluding that even if pretrial identification procedures had been unduly suggestive any error in admission of in-court identification was harmless when other witnesses identified the accused as the robber). We overrule appellant's first

6

issue.

## *Appellant's Custodial Statement*

In a fourth issue, appellant asserts the trial court erred in denying his motion to suppress admission of his recorded, custodial statement, claiming that it was not voluntary. As reflected in the record of the suppression hearing, appellant contacted Officer Waters more than once by telephone in an attempt to speak with officers about the incident and "clear his name." The recorded statement and the record of the suppression hearing reflects that Officer Waters admonished appellant of his statutory and *Miranda* warnings by reading the warnings from a card, and appellant indicated his understanding of each of the warnings. Even though appellant was unaware that the officer sought and obtained a warrant for his arrest, it is undisputed that appellant was in custody at the time Officer Waters gave him these admonishments. Then the following exchange transpired during the recorded statement:

> [Appellant]: Why is it saying I need a lawyer?
>
> [Officer]: That's just part of the warning.
>
> [Appellant]: Do I need a lawyer present for this?
>
> [Officer]: No, you don't need a lawyer present. It's just telling you that you have the opportunity. It's your Miranda warning and you have the option. Okay?
>
> [Appellant]: Okay.
>
> [Officer]: So, at the end of this, you are waiving the rights in order to intentionally, knowingly, and voluntarily continue with the interview?
>
> [Appellant]: Yes.
>
> [Officer]: Right, you are waiving those rights as I read them to you?
>
> [Appellant]: Yes.

As reflected in the recorded statement, appellant spoke with the officer for over two hours before invoking his right to an attorney.

7

The statement of an accused may be admitted into evidence against the accused if the statement was freely and voluntarily made without compulsion or persuasion. *See* Tex. Code Crim. Proc. Ann. Art. 38.21 (West 2012). Article 38.22 of the Texas Code of Criminal Procedure, entitled "When Statements May Be Used," provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against an accused in a criminal proceeding unless (1) the statement was recorded, and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. Tex. Code Crim. Proc. Ann. Art. 38.22, § 3(a) (West 2012); *Joseph v. State*, 309 S.W.3d 20, 23–24 (Tex. Crim. App. 2010). An accused must be given the following warnings:

> (1) [H]e has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time[.]

Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2(a), 3(a)(2). Article 38.22 contains two distinct elements relating to a statement's admissibility: (1) the accused's receipt of the prescribed warnings, and (2) the accused's knowing, intelligent, and voluntary waiver of the rights set out in the warnings. *See* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2(a), 3(a)(2); *Joseph*, 309 S.W.3d at 24.

Appellant does not contend that he was not warned of his rights. Appellant does not suggest that the question, "Do I need a lawyer present for this," is an

8

unequivocal assertion of his *Miranda* rights, amounting to an invocation of his right to counsel. Rather, appellant's chief complaint is the officer's statement, "No, you don't need a lawyer." According to appellant, the officer's statement was not a clarification of the warnings, but rather an affirmative additional statement that appellant did not need a lawyer, which vitiated the validity of the warnings set forth in article 38.22 of the Texas Code of Criminal Procedure and *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Appellant argued at the suppression hearing that, as a result of the officer's statement, any waiver of his rights was involuntary. On appeal, he asks this court to view the officer's statement in light of appellant's fifth-grade education.

The State has the burden of showing, by a preponderance of the evidence, that an accused knowingly, intelligently, and voluntarily waived his statutory and *Miranda* rights. *See Joseph*, 309 S.W.3d at 24. In the context of either a written or oral confession, a waiver of rights may be inferred from the actions and words of the person being interrogated based on the totality of the circumstances surrounding the interrogation, including an accused's experience, background and conduct. *See id.* at 24–25. In viewing whether an accused voluntarily relinquishes his rights, we consider whether the statement was a product of a free and deliberate choice rather than one born of intimidation, coercion, or deception. *See id.* at 25. We also consider whether an accused's waiver was made with full awareness of the nature of the right being abandoned and the consequences of the decision to relinquish the right. *See id.*

Contrary to appellant's contentions that this issue is a matter of first impression in Texas, at least one other case has dealt with an issue in which an accused asked the interrogating officer about the necessity of having a lawyer present for questioning. *See State v. Panetti*, 891 S.W.2d 281, 282 (Tex. App.—

San Antonio 1994, pet. ref'd) (involving an accused who asked, "Should I be answering these questions without my lawyer, or does it matter, or I mean I—I give up, anyway," before agreeing to continue with the custodial interview). When an accused makes an equivocal request for counsel, there is no requirement that an interrogating officer cease the questioning or confine the questions to clarifying an accused's ambiguous statements regarding counsel. *See Davis v. U.S.*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994); *see also Panetti*, 891 S.W.2d at 283–84 (ruling that even if the defendant's question about having an attorney present during questioning amounted to an equivocal request for counsel, the officer's continued questioning was constitutionally permissible). Accordingly, an interview may continue until an accused clearly and unambiguously invokes a right to counsel. *See Davis*, 512 U.S. at 459–60, 114 S. Ct. at 2355; *see also Panetti*, 891 S.W.2d at 284 (concluding that because the accused did not clearly invoke his right to counsel, an officer who did not cease questioning or limit the questions to the subject of having legal counsel present and, instead reminded the accused about the statutory and constitutional rights, acted appropriately and the motion to suppress the accused's statement should have been denied).

It is undisputed that Officer Waters read appellant the correct statutory and constitutional warnings from a card and that appellant indicated his understanding of each of those rights. We conclude that appellant's query, "Do I need a lawyer present for this," is an equivocal request for counsel. *Cf. Panetti*, 891 S.W.2d at 283 (declining to consider whether an accused's question, "Should I be answering these questions without my lawyer, or does it matter, or I mean I—I give up, anyway," amounted to an equivocal request for counsel). When appellant asked about counsel, Officer Waters reminded appellant that it was part of the statutory

warnings, told appellant that counsel did not need to be present for appellant to answer the questions,[1] informed appellant that was simply an option afforded to him, and then twice asked appellant if he intended to knowingly, voluntarily, and intelligently waive his rights and continue the interview. On one of these occasions, the officer specifically asked whether appellant knowingly, voluntarily, and intelligently waived the rights as they were read to him, and on both occasions, appellant agreed and continued with the interview. *See Panetti*, 891 S.W.2d at 284 (involving an officer who reminded the accused about the right to stop the questioning and then asked if the interview could continue). The officer's statements do not render appellant's recorded custodial statement inadmissible. *See id.*

The totality of the circumstances surrounding the interrogation shows that appellant's waiver was voluntary in that it resulted from a free and deliberate choice without intimidation, coercion, or deception. Although appellant testified at the hearing that he was not aware of the arrest warrant when he gave his statement, the record reflects that appellant attempted to contact Officer Waters more than once and left the officer a voicemail message stating that he wished to speak with the officer and "clear his name." Appellant willingly cooperated with officers, accompanied them to the police station, and participated in the interview that lasted over two hours. Appellant then requested an attorney, but at no time prior to that

---

[1] Even if we were to presume for the sake of argument that the officer's remarks amounted to an additional remark on or a misrepresentation of appellant's statutory and constitutional rights, an interrogating officer's misrepresentation or remark is simply one more relevant factor under the totality of circumstances in considering voluntariness; alone, it is insufficient to render an otherwise voluntary confession inadmissible. *See Creager v. State*, 952 S.W.2d 852, 855 (Tex. Crim. App. 1997) (involving an interrogating officer's remarks about speaking with officers that were alleged to have led an accused to believe that confessing would help his case, and which the accused claimed to have affected the voluntariness of his statement); *Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996) (involving a misrepresentation as to the accused's connection to the charged offense).

11

point did he ask to halt the interview. During the process, appellant was offered food and drinks. The record shows no evidence of coercion, intimidation, misconduct, or impropriety by the officers. Rather, the lack of intimidation and coercion can be seen during the interview when appellant felt comfortable enough to joke with officers as they re-entered the room; he made no attempt to leave or ask questions. *See Joseph*, 309 S.W.3d at 24.

The totality of the circumstances also reflects that appellant's waiver was made with full awareness of both the nature and the rights being abandoned and the consequences of his decision. *See id.* According to the record, appellant was thirty-six years old at the time of the statement. He attended school through the fifth grade. Appellant claimed to have been intoxicated on a narcotic when he gave the recorded statement.[2] Intoxication, alone, does not render a statement involuntary. *See Oursbourn v. State*, 259 S.W.3d 159, 173 (Tex. Crim. App. 2008). The record also reflects that appellant has a lengthy background with the criminal-justice system, involving felony convictions for unauthorized use of a motor vehicle and possession of a controlled substance, for which he was sentenced to confinement, in addition to numerous misdemeanor convictions. In spite of appellant's limited education, other factors, such as appellant's age and prior experience in the criminal-justice system, weigh in favor of the trial court's finding that appellant's statement was voluntary and admissible. *See Green*, 934 S.W.2d at 100 (concluding that, when considering the accused's criminal background, a statement was voluntary even though interrogating officer made a misrepresentation about the accused's connection to crime). We conclude that under the totality of the circumstances, appellant knowingly, voluntarily, and

---

[2] Although the record of the suppression hearing reflects that appellant claimed to have been intoxicated at the time he gave his custodial statement, appellant does not assert on appeal that his intoxication affected the voluntariness of his statement.

intelligently waived his statutory and constitutional rights when he gave his custodial statement to the officers. *See Panetti*, 891 S.W.2d at 284. The trial court properly denied appellant's motion to suppress. *See id.* Appellant's fourth issue is overruled.

## EVIDENTIARY RULINGS

In three issues, appellant complains about various evidentiary rulings during trial. A trial court's ruling to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007). We will uphold the trial court's decision to admit this evidence if the decision was within the zone of reasonable disagreement. *See id.* We do not reverse the trial court's ruling on the sole basis that we disagree with the decision. *See id.*

### *Allegedly Improper Opinion Testimony*

In his second issue, appellant asserts the trial court erred in overruling his objection to Anthony Adams's testimony. Adams, who knew both appellant and the complainant, described an incident in which he saw appellant with a firearm in the week before the shooting. Adams testified that he saw appellant and the complainant together on the morning of the shooting, and later learned that the complainant had died. Adams testified that he was arrested on unrelated charges several days following the shooting. While in custody, Adams spoke with Officer Waters, who believed that Adams knew the whereabouts of the firearm used in the charged offense. While in confinement following his arrest, Adams saw appellant, who inquired why Adams was in jail. Adams testified to his conversation with appellant:

> [Prosecutor]: Now, can you tell this jury what [appellant] said to you?
> [Witness]: Said several things to me. Asked me what I was doing in

13

jail. I told him, you know, what I'm doing here: "You got me here."

[Prosecutor]: Why did you tell him he got you there?

[Witness]: because I—I automatically assumed—once Mr. Waters started messing with me about the gun, I automatically assumed he killed [the complainant].

Appellant objected to the testimony and asserted such testimony was not within Adams's personal knowledge. When the State responded that Adams could offer opinion testimony, appellant responded that the testimony still lacked personal knowledge.

Appellant contends that Adams's testimony was inadmissible under Texas Rules of Evidence 602. This rule, entitled "Lack of Personal Knowledge," provides in pertinent part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tex. R. Evid. 602. We also construe appellant's objection at trial, in response to the State's argument that Adams may offer an opinion, to encompass a complaint about Adams's opinion testimony lacking personal knowledge. Texas Rule of Evidence 701, entitled, "Opinion Testimony by Lay Witness," provides, "[i]f the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Tex. R. Evid. 701; *see Fairow v. State*, 943 S.W.2d 895, 898 (Tex. Crim. App. 1997). A witness may testify to his perceptions of events that the witness personally observed or experienced. *See Fairow*, 943 S.W.2d at 898. Perceptions include a witness's interpretation of information acquired through his or her senses or experiences at the time of the event. *See Osbourn v. State*, 92 S.W.3d 531, 535 (Tex. Crim. App. 2002). Such testimony can include opinions,

14

beliefs, or inferences as long as they are drawn from the witness's own experiences or observations. *Id.*

Adams testified to seeing appellant with a firearm one week before the shooting and then testified to his conversation with Officer Waters regarding the whereabouts of the same firearm following the commission of the charged offense. Adams testified that a search warrant for the firearm was executed on his home, but that officers did not recover the weapon. When Adams testified that he assumed he was in jail because of the shooting, he referred to a conversation with Officer Waters about the firearm. All of this testimony was within Adams's personal knowledge, rationally based on his perception of the events and experiences, and is helpful to a clear understanding of Adams's testimony. *See* Tex. R. Evid. 602; Tex. R. Evid. 701; *Fairow*, 943 S.W.2d at 898. Likewise, this testimony was, in effect, Adams's opinion or belief as to why he was confined, and it is reasonably likely that the jury understood that the opinion was based on Adams encountering appellant with the firearm before the shooting, seeing appellant with the complainant on the day of the shooting, learning that the complainant died, having a search warrant for the firearm executed on Adams's home, and then being questioned by Officer Waters about the same firearm used in the commission of the charged offense. *See* Tex. R. Evid. 701; *see Fairow*, 943 S.W.2d at 899 (providing that a witness may possess personal knowledge of the facts from which an opinion regarding the events may be drawn). Because the testimony is reflective of Adams's personal knowledge and his perceptions of the events as he experienced them, the trial court did not err in overruling appellant's objection. *See Fairow*, 943 S.W.2d at 898 (providing that if personal knowledge is not established, the trial court should exclude the testimony).

Appellant also seems to assert that the trial court's admission of Adams's

testimony is not supported by Texas Rule of Evidence 702 and offends notions of due process. But, appellant has failed to preserve error on these complaints. To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a). The appellate complaint must comport with the specific objection made at trial. *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Even constitutional errors may be waived by failure to object at trial. *Id.* The record does not reflect, and appellant does not cite anywhere in the record, that he asserted an objection to Adams's testimony as improper expert-opinion testimony under Rule of Evidence 702. Likewise, the record does not reflect that appellant asserted an objection to the testimony as violating his due-process rights. Because appellant's arguments on appeal do not comport with the objections raised in the trial court, he has failed to preserve these arguments for appellate review. *See* Tex. R. App. P. 33.1(a). Appellant's second issue is overruled.

### *Allegedly Admissible Hearsay Testimony*

In his third issue, appellant contends the trial court erred in sustaining the State's hearsay objection to Adams's testimony concerning the written statement he gave to Officer Waters. Apparently, Adams's written statement contained other statements made by appellant to Adams about how appellant obtained the firearm. Appellant sought to cross-examine Adams about the written statement, posing the following question: "Do you recall telling Officer Waters in your statement how you knew [appellant] got the gun, and he got it from Big Jim McCrae?" The State objected to the question, asserting that it called for inadmissible hearsay.

16

Appellant asserted that the testimony was admissible as an admission of a party opponent under Texas Rule of Evidence 801(e)(2), an exception to the hearsay rule. The trial court ruled that any testimony related to statements made by appellant that are reflected in Adam's written statement to investigators is inadmissible hearsay.

Appellant contends that the question posed did not elicit hearsay. Generally, hearsay is not admissible except as provided by statute or the Texas Rules of Evidence. Tex. R. Evid. 802. Hearsay is generally considered a statement, other than one made by the declarant while testifying at a trial or a hearing, offered into evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d).

Texas Rule of Evidence 801(e)(2) provides that a statement is not hearsay if it is offered against a party and is a party's own statement. Tex. R. Evid. 801(e)(2)(A). The testimony appellant attempted to elicit from Adams encompassed appellant's own statements to Adams, which Adams then passed on to Waters in a written statement. A party's own statements, when offered against him, are not hearsay and are admissible. *See Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999); Tex. R. Evid. 801(e)(2). The only requirements for admissibility of an admission of a party opponent under Rule 801(e)(2)(A) is that the admission is the party's own statement and that it is offered against him. *Trevino*, 991 S.W.2d at 853. Because appellant sought to offer his own out-of-court statements through Adams, appellant is the offering party. *See* Tex. R. Evid. 801(e)(2)(A). Therefore, the testimony appellant sought to elicit is not offered against him, and does not fit within the hearsay exception contained in Rule 801(e)(2). *See id.*

To the extent appellant acknowledges that the question attempted to elicit hearsay, appellant contends that he should have been entitled to introduce the

remainder of his written statement under Texas Rule of Evidence 107, entitled, "Rule of Optional Completeness." The record does not reflect, and appellant has not cited the record for support, that appellant asserted any objection pursuant to Rule 107 at trial. *See* Tex. R. App. P. 33.1(a)(1)(A); *Tovar v. State*, 221 S.W.3d 185, 189–90 (Tex. App.—Houston [1st Dist.] 2006, no pet.). To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex. R. App. P. 33.1(a). Accordingly, because appellant did not present Rule 107 as a specific ground for the ruling he desired at trial and now challenges on appeal, he has failed to preserve error on this complaint. *See* Tex. R. App. P. 33.1(a)(1)(A); *Tovar*, 221 S.W.3d at 189–90.

Likewise, although appellant asserts on appeal that the statement was admissible as impeachment testimony under Texas Rule of Evidence 613, appellant failed to obtain a ruling from the trial court on his brief reference that the testimony was admissible as impeachment. *See* Tex. R. App. P. 33.1(a)(1)(A) (requiring a party to obtain a ruling from the trial court on an objection). Finally, although appellant obtained an adverse ruling from the trial court to his objection that he was denied due process and an opportunity to confront witnesses pursuant to the Texas and United States Constitutions, appellant has not provided any argument, analysis, or citation to legal authority attacking the trial court's ruling on these grounds or supporting this complaint on appeal. *See* Tex. R. App. P. 38.1(i); *Hughes v. State*, 962 S.W.2d 689, 694 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). By failing to adequately brief this basis for the trial court's ruling, appellant has not demonstrated that the trial court abused its discretion in denying the admission of Adams's testimony on these constitutional grounds. *See* Tex. R. App. P. 38.1(i). Appellant's third issue is overruled.

## *Custodial Statement*

In his fifth issue, appellant asserts the trial court erred in overruling his objections to portions of his custodial statement, namely statements by Officer Waters that allegedly contained inadmissible hearsay, inadmissible opinion testimony, or false statements. The record reflects that appellant raised a number of objections to admission of the appellant's recorded, redacted[3] custodial statement with Officer Waters, identifying the exact place in the recorded statement where the objectionable statements were found. Notably, however, appellant asserted no objections that fell after the time marked by two hours, twenty-seven minutes and thirteen seconds ("the 2:27:13 mark") on the recorded statement. The trial court overruled all of appellant's objections.

When the exhibit was offered into evidence, the parties disagreed about the exact place in the recording where appellant invoked his right to counsel and where the statement should be stopped. The record reflects the following statements by defense counsel:

> Okay. I want to make sure the record reflects that I wanted it to stop a couple of minutes before then. So my objections that I made, the seventy objections I made to the statement, including all the hearsay of the detective and that sort of thing are basically waived by me. I just want to state for the record, at this point trial strategy has changed, that until the point he invokes his right to a lawyer, which I believe occurs at two hours, twenty-seven minutes, thirteen seconds, somewhere thereabout, with the language I read.

> So I am not waiving after that any of the objections I made earlier to the hearsay, the improper identification, the improper credibility opinion of the officer, and that sort of thing. And that would basically include everything from two hours, twenty-seven minutes thirteen seconds through the end of the tape where the State wants it to stop.

---

[3] By agreement of the parties, some parts of the recorded statement already were redacted to omit reference to appellant's criminal background.

So I want to make perfectly clear, I'm not waiving those objections, but I am everything prior to the point in time that I'm talking about.

The trial court noted the objections. The redacted statement was admitted into evidence, played for the jury, and stopped a couple of minutes after appellant wanted the statement to be stopped. When the statement was played for the jury, appellant objected to the place where he requested the recording to be stopped, and the trial court overruled the objection. No other objections were lodged while the jury viewed the statement.

Appellant has not preserved error regarding his appellate complaint. Although he made reference to an estimated seventy objections to parts of the recorded statement, he abandoned those objections and affirmatively waived them; all of those objections involved statements that had occurred before the 2:27:13 mark on the recorded statement. When a party creates an impression that he is abandoning an objection, the initial objection is insufficient to preserve error for appeal. *See Purtell v. State*, 761 S.W.2d 360, 366 (Tex. Crim. App. 1988). The record does not reflect, and appellant has not cited in his appellate brief, any other evidentiary objections that he asserted to the custodial statement beyond the 2:27:13 mark on the recorded statement. *See* Tex. R. App. P. 33.1(a). Accordingly, appellant failed to preserve error. Appellant's fifth issue is overruled.

The trial court's judgment is affirmed.


/s/     Kem Thompson Frost
Justice


Panel consists of Justices Frost, Brown, and Busby.

Publish — TEX. R. APP. P. 47.2(b).