# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00093-CR

**Leslie Edwards, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-DC-11-300034, THE HONORABLE DAVID CRAIN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Leslie Edwards of aggravated sexual assault of a disabled individual. *See* Tex. Penal Code § 22.021(a)(1)(A)(I), (2)(C). In accordance with the jury's punishment verdict, the trial court sentenced appellant to serve ten years in the Texas Department of Criminal Justice but suspended imposition of that sentence and placed appellant on community supervision for a period of ten years. *See* Tex. Code Crim. Proc. art. 42.12, § 4(a), (b). On appeal, appellant complains about the admission of opinion testimony from the victim's medical provider during the guilt-innocence phase of trial. Finding no reversible error in the admission of this evidence, we affirm the trial court's judgment of conviction.

## BACKGROUND[1]

On December 24, 2010, appellant visited the home of his ex-wife to drop off Christmas money for his children. His ex-wife is the aunt and care giver of T.L., her adult niece who is mentally disabled.[2] T.L. was home alone, which appellant knew having called the home just before his visit. During his visit, appellant engaged in sexual conduct with T.L., including kissing her, touching her "all over her body," putting his mouth on her vagina, and putting his fingers inside her vagina. T.L. testified that she did not want appellant to do these things and that she told him no.

The day after Christmas, T.L. disclosed to her aunt what appellant had done. Her aunt called the police because T.L. is mentally disabled. During the investigation, police questioned appellant about his Christmas Eve visit to his ex-wife's house. He admitted to engaging in sexual conduct with T.L. but claimed it was consensual. During his interview, appellant acknowledged several times that T.L. was "mentally retarded." One of the explanations he gave for his conduct was that he wanted to see if she would respond like a "regular woman."[3]

---

[1] Because appellant does not challenge the sufficiency of the evidence to support his conviction, we provide only a general overview of the facts of the case. *See King v. State*, 953 S.W.2d 266, 267 (Tex. Crim. App. 1997). We provide additional facts as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

[2] To protect the privacy of the victim, we refer to her using her initials.

[3] Appellant also explained to the detective that he wanted to engage in sexual activity with someone like T.L. because, due to her situation, she did not have a boyfriend and was not sexually active. Thus, she would be disease free so he could have a sexual relationship with her without the risk of contracting a sexually transmitted disease.

2

**DISCUSSION**

At trial, the State called Dr. Emmanuel Edoka, T.L.'s primary care physician, to testify about his opinion of T.L.'s disabilities based on his interaction with her during his 13 years as her treating physician. The State offered his testimony as a lay opinion.[4] On appeal, appellant argues that the trial court erred in admitting the doctor's testimony because he was not sufficiently qualified as an expert in mental health to render an opinion about whether T.L. was disabled pursuant to Texas law.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.). We consider the ruling in light of what was before the trial court at the time the ruling was made and uphold the court's decision if it lies within the zone of reasonable disagreement. *Billodeau v. State*, 277 S.W.3d 34, 39 (Tex. Crim. App. 2009); *Sandoval*, 409 S.W.3d at 281. If the trial court's evidentiary ruling is reasonably supported by the record and correct on any theory of law applicable to that ruling, we will uphold the decision. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005); *Sandoval*, 409 S.W.3d at 297.

When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may be admissible as both Rule 701 lay

---

[4] The State did not characterize the doctor's testimony as a lay opinion when offering it. However, when appellant objected to the doctor's testimony because he was "just merely a physical doctor" who was not qualified to render an opinion on mental health, the State indicated that Dr. Edoka was "not here testifying as a mental health expert" but as T.L.'s medical provider and stated that his opinion about her disabilities was based on his experience with T.L.

3

opinion testimony and Rule 702 expert testimony.[5] *Osbourn v. State*, 92 S.W.3d 531, 536 (Tex. Crim. App. 2002). A person with specialized knowledge may testify about his or her own observations under Rule 701 and may also testify about the theories, facts, and data used in his or her area of expertise under Rule 702. *Id.*; *see also Harnett v. State*, 38 S.W.3d 650, 659 (Tex. App.—Austin 2000, pet. ref'd). Generally, "observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience and training." *Osbourn*, 92 S.W.3d at 537. Moreover, a lay witness with sufficient personal experience and knowledge may be qualified to express an opinion on a matter outside the realm of common knowledge with respect to events not normally encountered by most people in everyday life. *Id.* "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Id.*

Dr. Edoka testified that T.L. is "a generally physically healthy young lady who has some issues with her mental ability." He described her inability to articulate her medical problems, explaining that she does not have a good understanding of her medical issues and that she has "never at any time been able to elaborate on her symptoms." Instead, the doctor must rely on the adult

---

[5] A lay witness may testify in the form of opinions or inferences if the opinions or inferences are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Tex. R. Evid. 701. An expert witness may testify in the form of an opinion if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact issue" and the witness is qualified as an expert by "knowledge, skill, experience, training, or education." Tex. R. Evid. 702.

family member present with T.L. at the visit to provide the necessary information (her grandmother when she was alive and T.L. lived with her, and then her aunt). Any medications or treatment instructions are given to the family member as he would "not entrust" T.L. to be in charge of her treatment or medications. Dr. Edoka also stated that T.L. has a diagnosis of mental retardation, which he knew from her past medical history acquired by him through prior medical records and information from family members. In response to the prosecutor's question encompassing the Penal Code definition of "disabled individual," Dr. Edoka opined, based on his interaction with T.L. and his understanding of her medical condition, that T.L. is "not able to . . . fend for herself, provide shelter for herself [or] appropriately care for herself and protect herself."

Appellant contends that Dr. Edoka was not qualified as a mental health expert and thus his opinion testimony was inadmissible. We disagree. We find Dr. Edoka's testimony to be that of a lay witness because it satisfies the requirements of Rule 701. First, the doctor's opinion was based on his perception of T.L. and his familiarity with her as her treating primary care physician for 13 years. Also, he testified that he was "very familiar with cognitive impairment," having treated patients with medical conditions involving cognitive impairment or mental disabilities (including the treatment of some psychiatric conditions and mental health issues), giving him personal knowledge gained by his own observation and interaction with cognitively impaired or mentally disabled individuals. Second, although his opinion was not based on a scientific theory or specific mental health expertise, it was helpful to the jury in determining the factual issue of T.L.'s status as a "disabled individual" and did not require significant expertise to interpret. *See id.* Because Dr. Edoka's testimony was a lay opinion rationally based on his perception of T.L. rather than an

5

expert opinion based on facts utilizing specialized knowledge, he was not required to be qualified as a mental health expert.

It does not necessarily take an expert to ascertain whether an individual is a "disabled individual" as defined by the Penal Code. Though not personally familiar with T.L.'s day-to-day activities, such as her eating habits, school attendance, financial situation, or employment history, Dr. Edoka's repeated interactions with T.L. for more than a decade allowed him to form an impression of her disabilities. Lay opinion testimony can include opinions, beliefs, or inferences as long as they are drawn from the witness's own experiences or observations. *Id.* at 535; *Williams v. State*, 402 S.W.3d 425, 436 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Clearly, Dr. Edoka's experiences with T.L. demonstrate that she is unable to provide medical care for herself, one aspect of the legal definition of "disabled individual." From his observations and experiences, Dr. Edoka could form an opinion or belief about T.L.'s overall abilities to function or "fend for herself" and infer that she is unable to do so. Therefore, the trial court did not abuse its discretion by admitting Dr. Edoka's testimony as lay opinion testimony.

Moreover, even assuming that the trial court erred in admitting Dr. Edoka's opinion testimony, we conclude that any error was harmless. In analyzing the erroneous admission of expert testimony, we may consider, among other things: (1) the strength of the evidence of the appellant's guilt; (2) whether the jury heard the same or substantially similar admissible evidence through another source; (3) the strength or weakness of an expert's conclusions, including whether the expert's opinion was effectively refuted; and (4) whether the State directed the jury's attention to the expert's testimony during arguments. *See Coble v. State*, 330 S.W.3d 253, 286–88 (Tex. Crim. App. 2010).

6

In this case, there was ample evidence of appellant's guilt. It is undisputed that the alleged sexual conduct occurred. The only issues potentially in dispute were T.L.'s status as a disabled individual and perhaps appellant's knowledge of her disability. The evidence, excluding Dr. Edoka's testimony, established that T.L. suffered from significant mental impairment that rendered her unable to function independently to the level necessary to provide for herself. The evidence, including appellant's comments during his interview with the detective,[6] also demonstrates that appellant was aware of T.L.'s mental impairment.

The jury heard evidence substantially similar to Dr. Edoka's testimony concerning T.L.'s mental disability from several other sources. First, the responding police officer, a mental health officer, noted that T.L. was "childlike in nature" and that "her actions and mannerisms weren't age appropriate." The nurse who conducted the sexual assault exam on T.L. observed that T.L.'s "level of understanding was not where an average . . . adult woman would be." The nurse indicated that she had to "basically slow down the process of the exam" and explain what she was doing "at an easier to understand level" to accommodate T.L.'s mental impairment. The investigating detective testified that he "immediately came to the conclusion that [T.L.'s] demeanor was very childlike, that she . . . has a delayed mental ability." Accordingly, he talked to her "in a manner that [he] would talk to a child."

In addition, T.L.'s aunt, her primary caregiver for 11 years, testified extensively about T.L.'s disabilities. She indicated that T.L. is "mentally challenged" and "[is] going to always need someone to care for her" because she is not able to care for herself. While T.L. apparently graduated

_____

[6] A video recording of appellant's interview with the detective was admitted into evidence and played for the jury.

7

from high school, throughout middle school and high school she attended special education classes. She cannot read or do basic math and can only count small amounts of money. T.L. receives Social Security disability benefits based on her mental disability. The checks are made out to T.L.'s aunt because T.L. does not have a bank account or know how to manage money. She cannot pay any bills or buy groceries. Her aunt provides her an allowance and buys her clothes and basic necessities. T.L.'s only employment was through a vocational workshop where she worked providing janitorial services for Mr. Gatti's for approximately two months. T.L. can dress herself, bathe herself, and make cereal for herself. However, she attends a vocational workshop, taking a special transit bus, to learn basic daily life skills, such as how to cook, how to use bus services, and how to manage money. She socializes with friends from the workshop, but only with a chaperone provided by another vocational program.

Finally, when T.L. testified, the jury had the opportunity to observe her demeanor and assess her level of functioning. Her mental disabilities could readily be ascertained during her testimony. Although 35 years old at the time of trial, T.L. testified in a childlike manner: nodding or shaking her head, shrugging her shoulders, and pointing instead of verbally answering some questions. Also, she was unable to tell the jury where she lived, only that she lived with her aunt. She testified about fixing cereal for herself for breakfast, but could not explain how the cereal got into the pantry even though the evidence showed that she accompanied her aunt on trips to the grocery store. T.L. also testified that her favorite television show was Sponge Bob, a children's cartoon show.

The State did not emphasize Dr. Edoka's testimony or his opinion about T.L.'s disability during closing argument. In fact, the prosecutor only mentioned the doctor briefly during the State's rebuttal closing argument and only to respond to defense counsel's argument:

> You did hear from Dr. Edoka. And I take issue with [defense counsel]'s characterization that how dare we call someone who's been treating her physically for 13 years. Who better to know about how, in your definition, substantially unable to provide medical care for herself? I think it was pretty clear that she cannot take a prescription by herself or, you know, that she's -- I believe he said if there was a medication she had to take on a regular basis, he wouldn't just give her a pack of pills and say, go for it. Pretty good evidence as far as her being able to provide medical care for herself.

The prosecutor's reference did not highlight Dr. Edoka's expertise, but instead focused on his personal experience with T.L.

Appellant contends that "the jury's singular note to the court" during deliberations demonstrates that Dr. Edoka's testimony had a substantial influence on the jury's verdict because the question "directly related to whether T.L. was disabled as defined by Texas law." Initially, we observe that the record reflects that the jury asked three questions during deliberations on guilt-innocence, not one. The first, noted by appellant, asked for the definition of "substantial," presumably as used in the definition of "disabled individual."[7] The second asked if the State had to

---

[7] In accordance with the Penal Code definition of "disabled individual," the trial court instructed the jury in the charge that:

> Disabled individual means a person older than 14 years of age who by reason of age or physical or mental disease, defect or injury is substantially unable to protect himself or herself from harm or to provide food, shelter or medical care for themselves.

*See* Tex. Penal Code § 22.04(c)(3).

9

prove that appellant knew T.L. was incapable of "appraising or resisting."[8] The third asked if the State had to prove that appellant "knew of [T.L.'s] disability *if* she did not consent to the defendant."[9] (Emphasis in note.) The jury was confronted with two legal concepts concerning T.L.'s disability. First, her disability could render the sexual assault without her consent if appellant knew about her impairment. *See* Tex. Penal Code § 22.011(b)(4) (sexual assault is without consent if actor knows that because of mental disease or defect victim is incapable of either appraising nature of act or of resisting it). Accordingly, even if T.L. engaged in the sexual conduct willingly, or "consensually" as appellant claimed, it would still be without her consent given her status as a disabled individual—that is, if appellant knew that as a result of her mental impairment T.L. was "incapable of either appraising the nature of the act or of resisting it." *See id.* Second, her status as a disabled individual would constitute an aggravating factor, making the sexual assault an aggravated sexual assault. *See id.* § 22.021(a)(2)(C) (sexual assault is aggravated if victim is "disabled individual"). Simply because the jury sought clarification of these legal concepts, or even of the level of disability required to render a guilty verdict, does not demonstrate that Dr. Edoka's testimony influenced the jury's verdict, particularly given all the other evidence concerning T.L.'s

---

[8] In the charge, the trial court provided the following instruction about consent:

> An aggravated sexual assault is without the consent of the other person if the actor knows that as a result of mental disease or defect the other person is at the time of the sexual assault incapable of either appraising the nature of the act or of resisting it.

*See id.* § 22.011(b)(4).

[9] T.L. testified that when appellant came into the house on Christmas Eve, she felt scared. When the prosecutor asked if appellant did something to her, she said that he "hurt" her. After describing the sexual conduct, she testified that she did not want appellant to put his fingers in her vagina or his mouth on her vagina and that she told him no.

10

disability. In fact, the last two questions appear to assume T.L.'s disability when asking about the requirement of appellant's knowledge of her disability.[10]

After examining the record, we conclude that the admission of Dr. Edoka's opinion testimony, if it was error, did not influence the jury or influenced the jury only slightly. *See* Tex. R. App. P. 44.2(b) (non-constitutional error requires reversal only if it affects the substantial rights of the accused); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011) (appellate court will not overturn criminal conviction for non-constitutional error if court has fair assurance error did not influence jury, or influenced jury only slightly). We overrule appellant's sole point of error.

### INCORRECT JUDGMENT

In a footnote in his brief, appellant indicates that the trial court signed a nunc pro tunc judgment on May 10, 2012. Although he indicates that he requested a supplemental clerk's record containing the nunc pro tunc judgment, no such supplemental record was filed in this Court. Consequently, no nunc pro tunc judgment appears in the record before us.

Moreover, Rule 23.1 of the Texas Rules of Appellate Procedure vests a trial court with the authority to correct clerical mistakes or errors in a judgment through entry of a nunc pro

---

[10] Appellant also suggests that the trial judge's ruling on his motion for directed verdict—made outside the presence of the jury—demonstrates that Dr. Edoka's "expert" testimony influenced the jury because "it would be illogical to conclude that the judge was influenced by the testimony to this extent, yet the error did not influence the jury." We decline to equate a trial judge's ruling on matters of law (outside the presence of the jury) with an influence on a jury's factual determination of evidence. The trial judge's ruling was simply a determination that evidence existed in the record to allow the issue of appellant's guilt to be submitted to the jury. While it is true that the judge mentioned Dr. Edoka's testimony in making his ruling, he also mentioned T.L.'s testimony, referenced testimony given by T.L.'s aunt, and explicitly noted the existence of "many other things which I don't think I need to go into." Contrary to appellant's claim, the judge's ruling does not demonstrate that Dr. Edoka's testimony improperly influenced the jury.

11

tunc judgment *so long as the defendant has not appealed*. *See* Tex. R. App. P. 23.1. Absent certain exceptions not relevant here, once a defendant has filed a notice of appeal and the record has been filed with the appellate court, the trial court lacks authority to act on the case until it receives the appellate court's mandate. *See* Tex. R. App. P. 25.2(g); *see also Green v. State*, 906 S.W.2d 937, 939 (Tex. Crim. App. 1995) (interpreting former rule of appellate procedure 40(b)(2), predecessor to current rule 25.2). Thus, a trial court may not render a nunc pro tunc judgment after the appellate record is filed in the court of appeals. *See* Tex. R. App. P. 25.2(g); *Martinez v. State*, No. 01-12-00361-CR, 2013 WL 3957698, at *4–5 (Tex. App.—Houston [1st Dist.] July 30, 2013, no pet.) (mem. op., not designated for publication) (trial court lacked authority to enter nunc pro tunc judgment after appellate record had been filed); *Green v. State*, No. 03-12-00225-CR, 2012 WL 6097308, at *1 n.1 (Tex. App.—Austin Dec. 6, 2012, pet. ref'd) (mem. op., not designated for publication) (same); *Hightower v. State*, No. 06-09-00057-CR, 2009 WL 1974396, at *1 (Tex. App.—Texarkana July 10, 2009, no pet.) (mem. op., not designated for publication) (same); *see also Green*, 906 S.W.2d at 939 (findings of fact and conclusions of law, entered after filing of appellate record, were void).

Here, the appellate record had already been filed in this Court when the nunc pro tunc judgment was purportedly signed on May 10, 2012. Accordingly, the trial court lacked jurisdiction to enter the nunc pro tunc judgment, and it is void. Consequently, we review the original judgment of conviction contained in the record before us.

However, we note that the trial court's judgment of conviction in this case reflects that appellant waived a jury trial and entered a plea of "guilty" to the charge. As the record clearly demonstrates, appellant entered a plea of "not guilty" and submitted the matter of his guilt to a jury.

12

This Court has the authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment of conviction to reflect that appellant entered a plea of "not guilty" and that the case was tried before a jury.

## CONCLUSION

Finding no error in the admission of Dr. Edoka's lay opinion testimony, we modify the trial court's judgment of conviction as noted above and affirm the judgment as modified.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Modified and, as Modified, Affirmed

Filed:   May 29, 2014

Do Not Publish

13