**Affirmed and Memorandum Opinion filed March 11, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00128-CR

**TAHI DAYON WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1571570**

## MEMORANDUM OPINION

Appellant Tahi Dayon Williams appeals his conviction for aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2). Appellant raises four issues all arguing that the trial court abused its discretion when it allowed (1) testimony by three eyewitnesses who identified him as one of the robbers during an allegedly impermissibly suggestive pre-trial show-up procedure, and (2) one of those same eyewitnesses to make an in-court identification that was tainted by the allegedly impermissibly suggestive pre-trial

show-up procedure. Concluding any error that may have occurred was harmless, we affirm.

## BACKGROUND[1]

On November 22, 2017 two men walked into an AT&T store wearing hoodies. The first man was wearing a reddish or peach-colored hoodie and he pulled a pistol out of his pocket as he entered the store. The second man, appellant, wore a black hoodie and a beanie cap. While the men did draw the drawstrings on their hoodies tighter, their faces were still clearly visible in the store's surveillance video. The men ordered the store employees, Toddrick Johnson, Ibleam Paguanda, Ivan Wilson, and Quincy Laing, into a back room. Once there, the robbers ordered the employees to surrender their phones and wallets into a black trash bag held by appellant. While the first robber continued to hold the employees at gunpoint, appellant emptied a storage closet of numerous cell phones. The robbers also ordered Johnson, the store manager, to retrieve the cash drawer from the front of the store. Once they had the cash from the cash drawer, the robbers fled the building.

The robbers' exit from the AT&T store set off a tracking device hidden in the stolen merchandise. The tracker alerted Sergeant Joe Freeman at the Harris County Sheriff's Office of a potential crime at the AT&T store and updated him at short intervals on the stolen merchandise's geolocation, which he relayed to patrol officers. Following the tracker, officers located appellant attempting to hide in a car at a gas station a short distance away from the AT&T store, with the hoodies, beanie cap, gun, and cell phones that had been taken from the store, as well as approximately $3,171 in his pocket. This sum almost exactly matched the amount

---

[1] Because appellant has not challenged the sufficiency of the evidence supporting his conviction, we include only those facts necessary to provide background for his issues on appeal.

2

of money taken from the AT&T store. Garrett Gregory and Cornelius Harrell, whom surveillance footage showed leaving the same car, were found and detained inside the gas station's store. The suspects were detained significantly less than two hours after the robbery had been reported.

Meanwhile, at the AT&T store, several of the employees had spoken to Harris County Sheriff's Deputy Leonard Gonzales, the first officer on the scene, about the robbers' identifying information. Gonzales relayed that information to Sergeant Freeman. Sergeant Freeman also spoke with the eyewitnesses about their descriptions of the two robbers after he arrived on the scene. Sergeant Freeman decided to have all three of the suspects who had been detained at the gas station brought to the crime scene for a "live show[-]up lineup." Sergeant Freeman explained that he made the decision because the witnesses remained at the scene and "it was real fresh in their mind" at that time, and it was within the two-hour timeframe allowed under the Harris County Sheriff's Office show-up policy.

Sergeant Freeman then conducted the show-up identification in the same manner for each eyewitness. The eyewitness would come out of the back room where the employees waited with a supervising officer and join Sergeant Freeman at the front of the store. Outside the store, three patrol cars sat with a suspect handcuffed inside each car. Sergeant Freeman would then give the instruction for one of the detained suspects to be removed from the patrol car and he would have each eyewitness view the suspect from different perspectives before ordering the suspect back inside the patrol car. The witness would give "a general yes or no" as to whether the suspect was one of the robbers. The next suspect would then be brought out of the next patrol car. The suspects were labeled one, two, and three, Harrell, Gregory, and appellant respectively, and the numbering remained the same for each eyewitness. In addition, the suspects were brought out in the same order.

3

Sergeant Freeman did not tell or suggest to the eyewitnesses that the detainees were the suspects responsible for the robbery; instead, he instructed each eyewitness to look at the individual presented and "[i]f you recognize the individual, please let me know." In relevant part, Paguada, Wilson, and Laing did not recognize suspect one. They did identify suspect two as the robber in the reddish or peach-colored hoodie and they identified suspect three, appellant, as the robber in the black hoodie.

Appellant filed a pre-trial motion to suppress the eyewitnesses' identifications of him. Appellant argued that the show-up procedure used by Sergeant Freeman was impermissibly suggestive and violated his due process rights as a result. The trial court held a hearing on appellant's motion after the jury had been selected but before the trial started. The State called five witnesses during the hearing: Sergeant Freeman, and eyewitnesses Paguada, Johnson, Laing, and Wilson. The trial court granted appellant's motion with respect to Johnson, but denied it as to the remaining eyewitnesses.

Appellant's case proceeded to trial. During the trial eyewitnesses Laing, Paguada, and Wilson testified regarding their identification of appellant as the robber wearing the black hoodie. In addition, Pagauada identified appellant in court as the black-hoodie wearing robber. Significantly, Sergeant Freeman testified, without objection by appellant, to each eyewitness's identification of appellant as the robber who wore the black hoodie. In addition, Sergeant Freeman testified that he had reviewed the video taken by the AT&T store's surveillance cameras as well as still photographs taken from that video. Sergeant Freeman identified appellant as the person in those exhibits wearing the black hoodie. Appellant's only objection to this testimony by Sergeant Freeman was that it called for speculation. At the conclusion of the evidence the jury found appellant guilty

4

of aggravated robbery with a deadly weapon. The trial court assessed appellant's punishment at 25 years in prison. This appeal followed.

ANALYSIS

Appellant raises four issues on appeal. All arise out of the crime scene show-up organized by Sergeant Freeman and make the same arguments; we therefore address them together. In appellant's view, the show-up procedure was so impermissibly suggestive that it tainted the eyewitnesses' out of court and in-court identifications of him. According to appellant, by denying his motion to suppress and allowing the jury to hear the eyewitnesses testify regarding their identifications of him during the show-up, the trial court abused its discretion and thereby violated his due process rights. Appellant did not ask the trial court to suppress any testimony by Sergeant Freeman regarding the show-up procedure or the eyewitnesses' identification of appellant. We conclude that even if the trial court abused its discretion when it denied the motion to suppress, any error was harmless.

We review a trial court's ruling on a motion to suppress for an abuse of discretion and we will overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial judge is the sole trier of fact and assesses the witnesses' credibility and decides the weight to give to their testimony. *Id.* at 24–25.

A pre-trial identification procedure may be so suggestive and conducive to mistaken identification that subsequent use at trial would deny the accused due process of law. *Barley v. State*, 906 S.W.2d 27, 32–33 (Tex. Crim. App. 1995). In

5

addition, an allegation that a criminal defendant's due process rights were violated through an unduly suggestive pre-trial identification procedure such as a crime scene show-up, is subject to a harmless error analysis. *See Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001); *Williams v. State*, 402 S.W.3d 425, 432 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (holding admission of in-court identification harmless, even if pretrial procedures were unduly suggestive and tainted witness's identification). Under that standard, "[i]f the appellate record in a criminal case reveals constitutional error that is subject to a harmless error review, [we] must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a).

Assuming without deciding that the crime scene show-up procedure was unduly suggestive, we turn to whether appellant was harmed. There is substantial unobjected-to evidence in the record supporting appellant's identification as the black-hoodie wearing robber. This evidence includes the following. First, appellant was found soon after the robbery hiding in a car a short distance away from the AT&T store. Found next to him inside the car were the hoodies, beanie cap worn by the black-hoodie wearing robber, a handgun, and cell phones that had been taken from the store. In addition, approximately $3,171 in cash, the almost exact amount taken from the store, was found in appellant's pocket. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (stating that circumstantial evidence alone can be sufficient to establish guilt). Second, Sergeant Freeman testified that he reviewed the surveillance videos taken by the AT&T store's security cameras, as well as still photographs made from those videos, and he identified appellant as the black-hoodie wearing robber carrying the trash bag of stolen merchandise and cash out of the store. Third, Sergeant Freeman testified

without objection to the show-up procedure that he conducted, and he then recounted, again without objection, the three eyewitnesses' testimony during the crime scene show-up identifying appellant as the black-hoodie wearing robber. Finally, the surveillance videos and still photographs were admitted into evidence and viewed by the jury. The jury was able to see the black-hoodie wearing robber and compare those images to appellant sitting in the courtroom. They concluded he was that robber when they found him guilty as charged in the indictment. We conclude that any error in allowing the eyewitnesses to testify regarding their identification of appellant during the show-up procedure, and Paguada's subsequent in-court identification, was harmless beyond a reasonable doubt. *See Williams*, 402 S.W.3d at 432 (concluding there was no harmful error because defendant's presence at the scene of the murder was undisputed "and another witness, whose in-court identification [defendant] does not challenge on appeal, positively identified [defendant] in court as the person who shot the complainant"). We overrule appellant's issues on appeal.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's final judgment.

/s/    Jerry Zimmerer
        Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Zimmerer.
Do Not Publish — TEX. R. APP. P. 47.2(b).

7